KATE PETE v. WOODMEN OF THE WORLD.

1. MEMBER OF BENEFICIAL ASSOCIATION CONCLUSIVELY PRESUMED TO KNOW CONSTITUTION AND LAWS OF ORDER, WHEN.

"A member of a beneficial association in whose application for membership and a certificate of. insurance it is stipulated that such certificate shall become" null and void in event of his failure to comply with all the laws and rules of the association, and whose certificate also contains a stipulation that it is issued and accepted "subject to all the laws, rules and regulations" of the association and "shall be null and void if said sovereign (the member) does not comply with all  *  *  *  the laws, rules and regulations of the Sovereign Camp" and that if the "dues and beneficiary fund assessment levied against the person named in the certificate by the association are not paid as required by the constitution and laws of the order, this certificate shall be null and void" is conclusively presumed to have knowledge of the provisions of such constitution, laws, rules and regulations, and to have assented thereto, and he is bound thereby.

2. IRREGULAR ACTS OF AGENT CONTRARY TO LAWS OF ASSOCIATION NOT BINDING UPON LATTER.

Where the laws of the order in such case provide for suspension and loss of benefits in case the member shall be delinquent with respect to payment of assessments, and he is so delinquent, the fact that a local secretary may have irregularly and without authority received from the member or the beneficiaries on former occasions payments of assessments with respect to which the member was delinquent and may have reported the reinstatment of the member, and the further fact that the general officers of the association in ignorance of such unauthorized and irregular acts on the part of the local secretary may have received the delinquent assessments thus collected, will not estop the association from availing itself of subsequent delinquencies as a defense to a suit on the certificate; nor will it therefore be required to accept payment of such subsequent delinquencies under like conditions as previous delinquencies were so irregularly received. *A fortiori* where when the previous delinquencies were received the insured was in good health and entitled to discharge his delinquencies and be reinstated, irregularities in the receipt of such delinquencies will not affect the right of the association to decline to receive delinquent assessments after the insured is dead or while he is dying; nor its right to defend on the ground that such delinquency terminated the rights of the beneficiaries under the certificate in accordance with the laws of the association.

3. PAYMENT OF OVERDUE ASSESSMENT AFTER FATAL INJURY, ETC., COMES TOO LATE, WHEN.

Payment of overdue assessments by a son of the delinquent member after the death of such member or while he is dying will neither prevent the *ipso facto* suspension from membership of the delinquent member, or the certificate of insurance held by him from becoming null and void under the laws of the association so provided in such a case, where there are no incidents connected with his relations

to the association that would fairly lead him to suppose that reinstatement would be granted if he should become sick while delinquent, or, that suspension and loss of benefits would not attach by reason thereof.

4. GENERAL CALLS FOR ASSESSMENTS DO NOT WAIVE AN IPSO FACTO SUSPENSION OF MEMBER.

Calls sent out by a beneficial association addressed to its local secretaries directing them to collect the assessments therein named, and to mail or deliver to every member of the local order a reminder to pay the assessment and dues on or before certain date, but without specially naming any member, is not a waiver by the association of its constitution and laws providing for the *ipso facto* suspension from membership of delinquent members. Such calls can only be construed as calls upon such delinquents as are still in good health and present themselves in person for reinstatement, or furnish the prescribed certificate of good health, as required by the laws of the association.

5. LOCAL AGENT CANNOT SUSPEND CONSTITUTION OF ASSOCIATION.

A local secretary of a beneficial association is without authority, by extending the time of payment or accepting overdue assessments without the knowledge or assent of the association or its officers, to suspend a provision in the constitution and by-laws of the association to the effect that nonpayment of assessments at the time they become due shall *ipso facto* suspend the delinquent from membership, when such authority to agents is expressly denied by the laws of the association, and members of the association are conclusively presumed to have knowledge of such absence of authority.

**Harvey Scribner** and **A. H. Coldham,** for plaintiff:

The suspension and reinstatement of members was a mere formality concocted for the purpose of receiving assessments at any time they might be paid, if the member was well, and of refusing past due assessments if the member died. This cannot be done, as an insurer will not be permitted to make a show of continued leniency or a pretense of liberality repeated with such uniformity as to put the insured off his guard, and afterward by a sudden change in his conduct without notice to the insured declare a forfeiture when the latter is helpless to avert the consequence and the rule has been held not to be altered by the fact that the insured was sick or in bad health at the time the payment was made. 19 Am. & Eng. Enc. Law (2 ed.) 56, 57; Hartford Life Ann. Ins. Co. v. Unsell, 144 U. S. 439 [12 Sup. Ct. Rep. 671]; Phoenix Mut. L. Ins. Co. v. Doster, 106 U. S. 30 [1 Sup. Ct. Rep. 18]; Insurance Co. v. Tullidge, 39 Ohio St. 240; Thompson v. Insurance Co. 104 U. S. 252; Modern Woodmen of A. v. Tevis, 111 Fed. Rep. 113 [49 C. C. A. 256]; Northern Assur. Co. v. Building Assn. 183 U. S. 308 [22 Sup. Ct. Rep. 133]; Modern Woodmen of A. v. Tevis, 117 Fed. Rep. 369 [54 C. C. A. 293]; Swander v. Insurance Co. 25 O. C. C. 3.

In Union Cent. L. Ins. Co. v. Hook, 62 Ohio St. 256 [56 N. E. Rep. 906], cited by defendant in error the policy provided that no agent could extend the time of payment of premium. The court held that

this was binding. That does not affect the question here or acquiescence by the company in a long continued and universal custom of an agent to extend the time. The court below suggested that the rule was different in fraternal societies. It was not so held in Modern Woodmen of A. v. Tevis, *supra*, and the following cases. Sweetzer v. Mutual Aid Assn. 117 Ind. 97 [19 N. E. Rep. 722] ; Stylow v. Insurance Co. 69 Wis. 224 [34 N. E. Rep. 151; 2 Am. St. Rep. 738].

Borgraefe v. Knights of Honor, 22 Mo. App. 127, cited by defendant, is not good law. If these forfeitures were rigidly exacted, these associations would go to pieces for the reason that the members belong to the laboring class who are not always able to pay promptly. Stylow v. Insurance Co. 69 Wis. 224 [34 N. E. Rep. 151; 2 Am. St. Rep. 738] ; Connelly v. Benefit Assn. 58 Conn. 552 [20 Atl. Rep. 671; 9 L. R. A. 428; 18 Am. St. Rep. 296].

The relation between the grand and subordinate lodge is not, strictly speaking, that of principal and agent. Gage v. Grand Lodge, 48 Hun 137.

In Sweetzer v. Mutual Aid Assn. 117 Ind. 97 [19 N. E. Rep. 722], insured was behind two assessments when he died; but the court say: It was peculiarly a question of fact for the jury to determine whether or not, under all the circumstances, the conduct of the association was not such as to throw the insured off his guard and to raise an implied agreement on its part to continue in the same course of dealing so long as it received his money without giving notice of a contrary purpose. Gage v. Grand Lodge, 48 Hun 137; Olmstead v. Insurance Co. 50 Mich. 200 [15 N. W. Rep. 82] ; Jackson v. Relief Assn. 78 Wis. 463 [47 N. W. Rep. 733].

Pete was suspended and reinstated at least five times and the sovereign lodge each time made the assessment for the succeeding month while he still stood suspended on their books. This is a waiver of the forfeiture under all the authorities. Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 196 [7 Sup. Ct. Rep. 500] ; Globe Mut. L. Ins. Co. v. Wolff, 95 U. S. 326; Wing v. Harvey, 5 De. M. & G. 265; Frost v. Insurance Co. 5 Denio 154 [49 Am. Dec. 234] ; Bevin v. Insurance Co. 23 Conn. 251; Insurance Co. v. Slockbower, 26 Pa. St. 199; Viele v. Insurance Co. 26 Iowa 9 [96 Am. Dec. 83] ; Hodsdon v. Insurance Co. 97 Mass. 144 [93 Am. Dec. 73] ; Knights of Pythias v. Kalinski, 163 U. S. 289, 298 [16 Sup. Ct. Rep. 1047].

In the last case the sovereign lodge was ignorant of the fact that the insured had forfeited his rights for a period of three months and the court held that it could not plead ignorance as a defense; that it was

its business to know, and this as relating to a transaction with one member. What would the court say of a sovereign lodge that would plead ignorance of the conduct of the secretary of a subordinate in relation to all its members for a period of five years? Supreme Lodge K. of P. v. Wellenvoss, 119 Fed. Rep. 671 [56 C. C. A. 287]; Phoenix L. Ins. Co. v. Raddin, 120 U. S. 183, 196 [7 Sup. Ct. Rep. 500; 30 L. Ed. 644]; Bacon, Ben. Soc. 1431; Stylow v. Insurance Co. 69 Wis. 224 [34 N. W. Rep. 151; 2 Am. St. Rep. 738].

Forfeiture of such contracts are not to be favored. Modern Woodmen of A. v. Jameson, 48 Kan. 718 [30 Pac. Rep. 460]; Supreme Council A. L. of H. v. Orcutt, 119 Fed. Rep. 682 [56 C. C. A. 294].

**C. W. Neilson** and **L. T. Williams,** for defendant. ·

Members of a fraternal insurance order are charged with notice of the laws of the order. Bliss, Life Insurance 463; May, Insurance (3 ed.) 552; Gaff v. Insurance Co. 10 Re. 86 (18 Bull. 310); affirmed by Supreme Court, no report, Gaff v. Insurance Co. 15 Bull. 373; Niblack, Insurance 12.

When a life insurance policy is accepted by the insured, and the policy is in his possession for several years, and he had paid the premiums thereon, he will be conclusively presumed to have the knowledge of all the provisions thereof, and he is conclusively bound by all the terms of the policy, whether he had read it or not. Union Cent. L. Ins. Co. v. Hook, 62 Ohio St. 256 [56 N. E. Rep. 906]; Travellers Ins. Co. v. Myers, 62 Ohio St. 529, 541 [57 N. E. Rep. 458; 49 L. R. A. 760]; Allen v. Insurance Co. 123 N. Y. 6 [25 N. E. Rep. 309]; Walsh v. Insurance Co. 73 N. Y. 5; Monitor Ins. Co. v. Buffum, 115 Mass. 343.

No agreement to extend the time of payment of premiums or assessments had by a subordinate officer can bind the sovereign camp. Union Cent. L. Ins. Co. v. Hook, 62 Ohio St. 256 [56 N. E. Rep. 906]; Travellers Ins. Co. v. Myers, 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760]; Walsh v. Insurance Co. 73 N. Y. 5, 10; Gould v. Insurance Co. 90 Mich. 302 [51 N. W. Rep. 455]; German Ins. Co. v. Heiduk, 30 Neb. 288 [46 N. W. Rep. 481; 27 Am. St. Rep. 402]; Northern Assurance Co. v. Building Assn. 183 U. S. 308 [22 Sup. Ct. Rep. 133].

No act or agreement of a subordinate lodge or officer, contrary to the terms of the policy or of the constitution and laws of the order, can estop the order or its supreme lodge from insisting on the exact terms of the policy and of its constitution and laws. Union Cent. L. Ins. Co. v. Buxer, 62 Ohio St. 385 [57 N. E. Rep. 66; 49 L. R. A.

737]; Union Cent. L. Ins. Co. v. Hook, 62 Ohio St. 256 [56 N. E. Rep. 906]; Gaff v. Insurance Co. 10 Re. 86 (18 Bull. 310); Lyon v. Supreme Assembly, 153 Mass. 83 [26 N. E. Rep. 236]; Travellers' Ins. Co. v. Myers, 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760]; Kocher v. Supreme Council, 65 N. J. Law 649 [48 Atl. Rep. 544; 86 Am. St. Rep. 687]; McIntyre v. Insurance Co. 52 Mich 188 [17 N. W. Rep. 781]; Cleaver v. Insurance Co. 65 Mich. 527 [32 N. W. Rep. 660; 8 Am. St. Rep. 908]; Thompson v. Insurance Co. 104 U. S. 252.

The act of the secretary of the local camp in receiving past due assessments in violation of the rules of the order, does not estop the supreme camp from insisting upon the suspension or forfeiture. Modern Woodmen of A. v. Tevis, 117 Fed. Rep. 369 [54 C. C. A. 293]; Grand Lodge A. C. U. W. v. Jesse, 50 Ill. App. 101; Bacon, Beneficial Societies 426; Northern Assur. Co. v. Building Assn. 183 U. S. 308 [22 Sup. Ct. Rep. 133]; Royal Arcanum v. Taylor, 121 Fed. Rep. 66 [57 C. C. A. 406]; Burbank v. Boston Relief Assn. 144 Mass. 434 [11 N. E. Rep. 691]; Lyon v. Supreme Assembly, 153 Mass. 83 [26 N. E. Rep. 236]; McCoy v. Insurance Co. 152 Mass. 272 [25 N. E. Rep. 289]; Union Cent. L. Ins. Co. v. Buxer, 62 Ohio St. 385 [57 N. E. Rep. 66; 49 L. R. A. 737]; Graveson v. Life Assn. 6 Circ. Dec. 327 (8 R. 171); affirmed under report Graveson v. Life Assn. 56 Ohio St. 725 [49 N. E. Rep. 1110]; Phoenix Mut. L. Ins. Co. v. Doster, 106 U. S. 30 [1 Sup. Ct. Rep. 18]; Thompson v. Insurance Co. 104 U. S. 252; Haupt v. Insurance Co. 110 Ga. 146 [35 S. E. Rep. 342].

Even if a custom of receiving overdue assessments from members in good health is shown and be held binding on the insurer, still that does not show a custom of receiving overdue assessments from members in ill health, and does not bind the insurer to a member whose overdue assessments were paid when he was in ill health. Schmidt v. Modern Woodmen, 84 Wis. 101 [54 N. W. Rep. 264]; Elder v. Grand Lodge A. O. U. W. 79 Minn. 468 [82 N. W. Rep. 987]; National Mutual Ben. Assn. v. Miller, 85 Ky. 88 [2 S. W. Rep. 900]; Lewis v. Insurance Co. 44 Conn. 72; Mutual Ins. Co. v. Insurance Co. 100 Pa. St. 172; Crossman v. Benefit Assn. 143 Mass. 435 [9 N. E. Rep. 753].

An attempted reinstatement of a suspended member by a local secretary in any way other than the way prescribed by the laws of the sovereign camp is utterly void and of no effect. Royal Highlanders v. Scoville, 92 N. W. Rep. 206 (Neb.); Field v. National Council, 64 Neb. 226 [89 N. W. Rep. 773, 775]; Rood v. Benefit Assn. 31 Fed. Rep. 62; Graves v. Modern Woodmen, 85 Minn. 396 [89 N. W. Rep. 6]; Elder

v. Grand Lodge A. O. U. W. 79 Minn. 468 [82 N. W. Rep. 987];
Borgraefe v. Knights of Honor, 22 Mo. App. 127; State v. Temperance
Assn. 42 Mo. App. 485; Karcher v. Supreme Lodge, 137 Mass. 368;
Hall v. Supreme Lodge, 24 Fed. Rep. 450.

A subordinate officer cannot bind the sovereign camp by accepting
overdue assessments after the death of the insured. Union Ins. Co.
v. McMillan, 24 Ohio St. 67; Miller v. Insurance Co. 110 Ill. 102;
Brown v. Grand Council, 81 Iowa 400 [46 N. W. Rep. 1086]; Joyce, In-
surance Sec. 1284; Thompson v. Dayton, 40 Ohio St. 63, 69; Todd v.
Railway Co. 19 Ohio St. 514, 526; Pennsylvania Co. v. Platt, 47 Ohio
St. 366 [25 N. E. Rep. 1028].

The rules and laws of the defendant are competent evidence. Zim-
merman v. Masonic Aid Assn. 75 Fed Rep. 236, 238; Myers v. Lucas,
8 Circ. Dec. 431, 434 (16 R. 545); Louisville, N. A. & C. Ry. Co. v.
Shires, 108 Ill. 617; Masonic Mut. Ben. Assn. v. Severson, 71 Conn.
719 [43 Atl. Rep. 192]; Secs 5284, 5285 Rev. Stat.

Fraternal societies are not governed by the same rules that govern
old line insurance companies. Protected Home Circle v. Tisch, 24 O. C.
C. 489, 493; See also, Townsend v. Harrison, 58 Ohio St. 398 [50 N.
E. Rep. 985]; Bradford Belting Co. v. Gibson, 68 Ohio St. 442, 448;
Modern Woodmen of A. v. Tevis, 117 Fed. Rep. 369, 371 [54 C. C. A.
293]; Royal Arcanum v. Taylor, 121 Fed. Rep. 66, 68 [57 C. C. A. 406].

**PARKER, J.**

This action was brought in the court below by Kate Pete, the bene-
ficiary under a certain certificate of insurance issued to her husband,
Joseph Pete, by the Woodmen of the World, on October 23, 1900, en-
titling her to receive $500 upon the death of her husband, if certain con-
ditions upon which this certificate was issued were complied with. It
appears that her husband came to his death upon February 6, 1903. She
applied to the association for payment and it was refused. Thereupon she
began her action.

The defense of the association was that the conditions of the cer-
tificate had not been complied with, in that Mr. Pete had failed to pay
assessments which he was required to pay under the rules of the associa-
tion and under his contract with the association; that he had failed to pay
certain assessments which were overdue at the time of his death, so that,
under the terms of the contract the certificate had become null and void.

It was admitted upon the part of the plaintiff that Mr. Pete had
failed to pay certain assessments at the time they fell due, and that cer-
tain assessments were overdue at the time of his death. But it was con-
tended upon her behalf that the association had customarily so treated such

delinquencies as that it had waived the condition and was, therefore, estopped from asserting it and could not insist upon a forfeiture, but should be required to pay the amount promised.

On behalf of the association, it is admitted that when these assessments became overdue from time to time, so that under the laws of the order the member became suspended, he was reinstated by the action of a certain representative of the association without being required to comply strictly with the rules of the association in that behalf; but they insist that in so far as the rules were deviated from and violated, this was done by such representative of the association in making the collections of the assessments and transmitting them, without knowledge upon the part of the association that he was thus deviating from the method that he should have pursued under the law; in other words, without knowledge of the fact that he was violating his instructions and his duties as an agent; and therefore the association insists that no claim of waiver can be predicated upon such action, and that no estoppel can arise out of it.

The case was tried by the court and jury and a verdict returned for the defendant under the instruction of the court, and judgment entered thereon, and it is to reverse that judgment that error is prosecuted in this court by the plaintiff in error, who was the plaintiff below.

In order that the controversy may be fully understood, it is necessary that certain provisions of the constitution and by-laws of the association shall be adverted to. This is what is known in general terms as a beneficial association. It is called The Woodmen of the World. It consists mainly of a sovereign camp, which is made up of subordinate camps or branches of the association. Section 2 of the constitution and by-laws of the sovereign camp of the Woodmen of the World provides, among other things, with respect to its powers that:

" It shall have the power to enact laws for its own government the government of its head camps, and camps, and for the control and manage-, ment of the business of the order generally, except in the Pacific and Canadian jurisdictions, and to provide penalties for the violation thereof. It shall have power to prescribe the rights, privileges, duties and responsibilities of itself, its camps and the membership of the order, and to finally determine the same."

Section 59 provides that:

" The following conditions shall be made a part of every beneficiary certificate and shall be binding on both member and order."

"First. This certificate is issued in consideration of the representations, warranties and agreements made by the person named herein in

his application to become a member and in consideration of the payment made when introduced in prescribed form, also his agreements to pay all assessments and dues that may be levied during the time he shall remain a member of the order."

Second. If the admission on fees, dues and beneficiary fund assessments levied against the person named in this certificate are not paid to the clerk of his camp, as required by the constitution and laws of the order, this certificate shall be null and void, and continue so until payment is made in accordance therewith."

Section 68 provides that:

"No officer, employe or agent of the sovereign camp, or of any camp, has the power, right or authority to waive any of the conditions upon which the beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws. Each and every beneficiary certificate is issued only upon the conditions stated in, and subject to the constitution and laws."

"The constitution and laws of the sovereign camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between the order and the member."

Section 81 provides that:

"Camps shall only have such powers as are given by the constitution and laws of the sovereign camp. They may adopt by-laws for their own government, not inconsistent with the constitution and laws of the sovereign camp, but such by-laws must be submitted to and approved by the sovereign commander before taking effect."

. Section 92 provides among other things that:

"The clerk of the camp shall not, by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of the order to bind the sovereign camp or his camp."

Among other provisions to be noted are the following:

"Section 107. On or about the twentieth day of each month the sovereign commander and chairman of the sovereign finance committee shall determine the number of assessments, if any, necessary to provide for the payment of death benefits, monuments and total disability claims, and shall so notify the sovereign clerk.

"Section 108. Every member of this order shall pay to the clerk of his camp, every month, one monthly payment of emergency fund dues and sovereign camp and camp dues, and unless otherwise notified by the

Pete v. Woodmen of the World.

clerk of his camp, in the manner herein provided, shall pay to said clerk every month one assessment in the beneficiary fund. He shall pay any additional assessments for beneficiary fund or special general fund dues: which may have been ordered by the sovereign camp. If he fails to pay any of the above assessments or dues on or before the first day of the month following, he shall stand suspended, and during such suspension: his beneficiary certificate shall be void.

"Section 115. Should a suspended member personally appear and apply for reinstatement within three months from the date of his suspension and pay all arrearages, if in good health and is not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid as soon as said payment shall have been received and recorded by the clerk of his camp.

"If a delinquent member does not appear in person to pay his arrearages, he must send to the clerk a written statement on the official form furnished by the sovereign camp that he is in good health, and is not addicted to the excessive use of intoxicants or narcotics, as a condition precedent to reinstatement and waiving all rights thereto if his said written statement shall be found to be untrue. No suspended member shall be reinstated until he has either appeared before the clerk in person, and paid his arrears and dues, or the clerk shall have actually received his written application for reinstatement, accompanied with all arrearages and dues. An attempted reinstatement shall not be operative or binding, unless the member be in fact in good health at the time.

"If any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions.

"Section 118. No suspended member shall be reinstated, whose health is at the time impaired, or who has used intoxicants to such an extent as to become frequently intoxicated, or who has become addicted to the use of opiates, cocaine, chloral, or other narcotic or poison to such an extent as to impair his health, or who has made false representations in his application to become a member, or been guilty of any of the offenses mentioned in these laws.

"Should any clerk knowingly violate this section, he shall, on proof thereof, be suspended from his office by the sovereign commander and expelled from the order by his camp.

"Section 119. A member suspended for nonpayment of assessments or dues is not entitled to any benefits of the order. He shall not be entitled to receive the pass words, nor to participate in any of the business

or social proceedings of his camp. He may be admitted at a meeting only to pay his arrearages and must retire if he fails to do so."

Section 24, prescribing the duties of the sovereign officers contains this provision:

"As soon as the required monthly report has been received from a camp, he (meaning the sovereign clerk) shall mail a notice to the last known address of every member reported suspended in said report informing him of the requirements of the laws of the order to become reinstated, but the failure to send such a notice shall in no wise affect the legal suspension of said member."

It will be observed that under these rules the failure to pay the assessments when due results in the suspension of the member *ipso facto,* without notice, and that after suspension and until reinstatement, he is entitled to none of the benefits of the order.

Joseph Pete was a member of this order. He became a member upon his application, the original of which is introduced in evidence here. The application is made upon a regular form provided for that purpose by the association; and, among other provisions in the application is this:

"I hereby certify, agree and warrant that all statements, representations and answers in this application, consisting of two pages, as aforesaid are full, complete and true, whether written by my own hand or not, and I agree that if I fail to comply with all the laws and rules of the order or association now in force or hereafter adopted, my beneficiary certificate shall become void, and all rights of any person thereunder shall be forfeited. I further agree to pay all assessments and dues for which I may become liable as a member of the order, as required by its constitution, by-laws," etc.

The beneficiary certificate issued to Joseph Pete contains this provision:

"This certificate is issued and accepted subject to all the conditions on the back hereof, and subject to all of the laws, rules and regulations of this fraternity now in force or that may hereafter be enacted, and shall be null and void if said sovereign does not comply with all of said conditions and with all of the laws, rules and regulations of the sovereign camp of the Woodmen of the World, that are now in force or which may hereafter be enacted, and with the by-laws of the camp of which he is a member."

It will be observed that the member is called a sovereign. Upon the back of the certificate, among other conditions is this:

"If the admission fees, dues and beneficiary fund assessments levied against the person named in this certificate are not paid to the clerk of

his camp, as required by the constitution and laws of the order, this certificate shall be null and void, and continue so until payment is made in accordance therewith."

These stipulations in the application and certificate, together with the provisions of the laws of the association quoted, constitute the essential terms of the contract between the insured and the association, necessary to be considered by us, and by which the beneficiary is bound. It is well settled by the authorities that all of these rules, these laws of the order, constitute a part of the contract, binding upon the insured. And it is well settled by the authorities that under circumstances like these shown in the record here, the insured is conclusively presumed to have known what these laws were and what they required of him.

Notwithstanding this it appears that on various occasions (some five or six occasions during the year 1902) he failed to pay his assessments when they fell due, or within one month thereafter, as is required by the laws of the order; that in pursuance of his duties, the secretary of the local camp from time to time reported his delinquencies; that before the expiration of the three months limit upon the right to reinstatement, the delinquencies were paid, after which the local secretary, in accordance with the laws of the order would report to the sovereign camp reinstatement of the member. But, as I have read, the laws required that the delinquent should appear in person to pay his arrearages, or must send to the clerk his written statement on the official form furnished by the sovereign camp that he is in good health, as a condition precedent to reinstatement, and waiving all rights thereto if said written statement shall be found to be untrue.

It appears that the secretary of the local camp did not require this of Mr. Pete, but permitted him and his wife and son, from time to time to pay up his arrearages, without requiring the personal appearance of Mr. Pete or the furnishing of a written statement that he was at the time in good health, and, upon the arrearages being paid up, he reported the member to the sovereign camp as being reinstated and in good standing in the association.

Now there is no evidence in the record that the officers of the sovereign camp ever had any notice or were informed in any way of the irregularities or breach of duty upon the part of the secretary of the local camp in thus proceeding to reinstate this member.

As I have said, Mr. Pete died upon February 6, 1903; he died very suddenly; he was at work upon the streets here in the city of Toledo

for the Electric Light and Traction Company, at work at the tracks, when he fell upon the street. There seems to be some doubt whether his death resulted from some heart trouble or from an accident. However that may be, he died suddenly. His son, who was present at the time, when it became apparent that he was dead or in a dying condition, seems to have hurried home to their residence not very far away, and there procured the book upon which entries were made of the payment of assessments, and with it hurried to the post office in this city, where the secretary of the local camp was employed, and where he received payments, and there without notifying the secretary of his father's condition, tendered to him the assessments which had fallen due upon the first of December, 1902, the first of January, 1903, and the first of February, 1903.

It appears that the secretary of the local camp, as a matter of accommodation, had advanced for Mr. Pete the assessment that fell due December 1, 1902, without any request on his behalf, but assuming that he would desire it, and that it would be a favor to him to have it advanced, so that he had not been reported to the sovereign camp as delinquent on account of that assessment, though Mr. Pete had not paid it and was really owing it to the secretary of the local camp: The assessment falling due upon the first day of February need not have been paid until the last day of that month, as the member had one month within which to pay.

In pursuance of what the laws required of him, the clerk had made his report to the sovereign camp on the sixth day of February of the payments received on account of the assessments due during the month of January—the assessments for that month. This report should have been sent upon the fifth, but it appears to have been delayed until the sixth. It had been made out however and mailed before the son of the insured appeared at the office to pay these delinquencies; and in this report Joseph Pete is reported as one of the delinquents.

Now when the young man appeared there to pay the assessment on February sixth, he did not make known to the secretary the condition of his father, and the secretary, assuming and supposing, as appears, that his father was in condition to be reinstated, received the money tendered and receipted for it. Immediately upon receiving the receipts, the young man said to him that he had some bad news to tell him, and upon the secretary inquiring what it was, young Pete said to him that his father, Joseph Pete, was dead or dying, that if he was not dead he supposed he would be by the time he, the son, should arrive home, or in

Pete v. Woodmen of the World.

substance that. Thereupon the secretary said to him he was very sorry to say that the payment came too late, that it would not do any good, and he then, or in the evening of that day, tendered the money back to the young man, who refused to receive it. It is insisted that this action, the paying of these assesments under these circumstances, served to reinstate Joseph Pete to full membership, and to restore to him all he may have lost by suspension.

We are of the opinion that the court of common pleas took the proper and correct view of the law of this case when it held that the member could not be reinstated in this way; that there was no estoppel and no waiver arising out of the delinquency of the secretary of the local camp in receiving payments as he had received them from time to time on previous occasions, it not appearing that the sovereign camp was advised of his action in the premises.

There is a great deal of law bearing upon this question, in the form of precedent cases similar to this, and in the text books, and it is presented in the briefs of counsel and has been reviewed upon the argument, very fully and very ably. But our time will not permit of a review of all these decisions. We content ourselves with simply announcing .the conclusions we have arrived at. We remark, however, that the authorities upon which we rely chiefly and those which seem to us to be most directly in point, and to clearly sustain our conclusions are the cases:

Northern Assur. Co. v. Building Assn. 183 U. S. 308 [22 Sup. Ct. Rep. 133]; Royal Arcanum v. Taylor, 121 Fed. Rep. 66 [57 C. C. A. 406]; Modern Woodmen of A. v. Tevis, 117 Fed Rep. 369 [54 C. C. A. 293]; Union Cent. L. Ins. Co. v. Buxer, 62 Ohio St. 385 [57 N. E. Rep. 66; 49 L. R. A. 737]; Union Cent. L. Ins. Co. v. Hook, 62 Ohio St. 256 [56 N. E. Rep. 906]; Travelers Ins. Co. v. Myers, 62 Ohio St. 529, 541 [51 N. E. Rep. 458; 49 L. R. A. 760]; Gaff v. Insurance Co. 10 Re. 86 (18 Bull. 310), affirmed by Supreme Court, no report, Gaff v. Insurance Co. 15 Bull. 373.

Though the laws respecting reinstatement were not strictly enforced by the secretary of the local camp, nor complied with by the assured, it does not appear that the assured was ever in bad health, or otherwise disqualified from becoming reinstated as a member at any of the times when his overdue assessments were accepted and receipted for by such secretary; so that, at most, the waiver could not be said to have gone beyond the formalities prescribed for reinstatement. There was nothing in the incidents that could fairly lead the insured to suppose that if he

became sick while delinquent, the reinstatement would be granted; or that if he should die before reinstated the plainly prescribed result of suspension would not attach, but the certificate would be honored just the same as if he had been in good standing at the time of death; and there was nothing in the evidence tending to show that he so thought. The conduct of the son, evidently with the concurrence of the wife, in proceeding with such dispatch to try to discharge the delinquencies while the father and husband was lying dead or dying upon the street indicates that they, at least, had not been misled, but keenly appreciated the critical situation and the necessity of doing everything possible to avert the apprehended consequences.

But we may lay aside all consideration of possible erroneous impressions that may have been made upon the minds of the insured and his family, for the contract was perfectly plain and explicit, and the sovereign camp does not appear to have been in any way responsible for any notions they may have had that the order would not insist upon substantial compliance with the conditions thereof. The assured having expressly agreed to be bound by the laws which became a part of the contract between him and the company, and having had full opportunity to acquaint himself with such laws (especially the essential parts pertaining to suspension and the results thereof incorporated into his beneficiary certificate which had been in his possession ever after its issue), we hold that he is conclusively presumed to have had knowledge of all the provisions of such certificate and laws affecting his rights and interests, and that he was bound thereby.

We also hold that under the laws of the order the secretary of the local camp was not authorized to extend the time of payment of assessments or accept overdue assessments, except in the manner and under the circumstances prescribed in section 115 of the laws of the order, i. e., either upon the insured appearing personally before such secretary, so that he may see the insured is alive and well or upon being furnished with the prescribed written statement to that effect.

The unauthorized acts of the secretary of the local camp in irregularly accepting overdue assessments and thereupon reporting to the sovereign camp that the member was reinstated, so long as such irregularities were unknown to the sovereign camp or its officers, did not have the effect of a waiver by the latter of any of the conditions of the contract; nor did such acts estop the sovereign camp from insisting upon suspension and forfeiture because of the nonpayment of assessments be-

fore they became overdue. Having failed to pay the assessments for January, 1903, before the expiration of that month, the insured was *ipso facto* suspended and his reinstatement did not result from, nor were the consequences of loss of benefits to the beneficiary obviated by the payment made by the son to the secretary of the local camp on February 6, 1903, while the father was dying of after he was dead.

We do not find in the record a scintilla of evidence tending to show that the unauthorized and irregular practice of the secretary of the local camp in accepting overdue assessments and reporting the reinstatement of the delinquent member was known to the sovereign camp or the officers thereof. Therefore, we hold that the trial court was right in directing a verdict for the defendant.

There is another matter upon which I should make a further remark. It appears that official calls for assessments were sent forward from time to time by the sovereign camp of the Woodmen of the World to the subordinate camps. The laws however provide that there shall be one assessment due from each member upon the first day of the month, which he shall be required to pay unless excused and notified; that he may be required to pay in one month more than one assesment and in such case he is to be apprised of the fact that he is called upon to pay the additional assessment; but the one assessment per month becomes due and payable regularly and the obligation rests upon him to go to the secretary of the camp and present himself there and make the payments without any notification from anybody, unless he is expressly excused from so doing.

It is contended by counsel on behalf of the plaintiff in error that there is something in the notifications or calls sent out from time to time by the sovereign clerk which amounts to a recognition of the fact that those who are delinquent on account of nonpayment of assessments are still in such standing in the order as that they may be properly called upon to pay assessments; and that under certain circumstances where an association thus recognizes the standing of a delinquent by calling upon him to pay assessments subsequent to those with respect to which he is delinquent, such recognition amounts to a waiver of the forfeiture arising out of the delinquency.

This call is directed to the clerk of every camp and it calls upon him to collect the assessment mentioned in the call, and it says that he is requested to mail to the last known post office address or deliver to every member of his camp on or before a date stated a reminder to pay said

assessment and dues. It does not name the persons who are to be called upon to pay, but it says he is to call upon every member, and it is urged that since Mr. Pete was, notwithstanding his delinquency, for certain purposes, and in certain respects, a member, it amounts to a call upon Mr. Pete to pay, and a waiver of his delinquency.

We cannot regard the call as having that effect. We do not think it was so intended, it cannot fairly be so understood. We think it does not amount to a waiver or abrogation of the law with respect to delinquencies, but it is simply a call upon the clerk to collect from those who are entitled to pay, including delinquents who may be still in good health and present themselves in good health or furnish the prescribed certificate.

I should also mention that counsel for plaintiff in error rely upon a case decided by this court, Swander v. Insurance Co. 25 O. C. C. 3. We do not see that anything said or decided there has any legitimate influence here. The cases are very different, entirely different. That was an action against an old line company and in that policy there was no condition of forfeiture whatever, and in that respect the case is radically different from this.

I wish to add that if counsel consider this case of enough importance and interest to have my remarks published, I desire that the points stated by counsel in their briefs, together with the authorities cited, may be published therewith, since the authorites are very fully collated; and we have taken a great deal of pains in their examination; and the report would then show the points of contention and the authorities considered.

Finding no error in the proceedings or judgment of the court of common pleas, it is affirmed.

**Hull** and **Haynes, JJ.,** concur.