HAYS v. WESTERN UNION TEL. CO.

1. DAMAGES—TELEGRAMS.—Where a telegraph company makes an error in transmitting a message, which causes a buyer of mules to pay more than the message price, the measure of damages is the difference between the price stated in the message and the price paid. *Sitton* v. *McDonald,* 25 S. C., 68; *Mood* v. *Telegraph Co.,* 40 S. C., 524; *Wallingford* v. *Telegraph Co.,* 53 S. C., 410; *distinguished from this.*

MR. JUSTICE GARY *dissents.*

2. WAIVER—IBID.—Waiver of the printed conditions on a message, requiring claim for damages to be made in writing in sixty days, may be shown by acts of an agent of the company authorized to gather information as to such claims in accepting verbal statement of damages and seeking information of plaintiffs as to the merits of the claim within the limit.

Before ALDRICH, J., Greenwood, March, 1903. Affirmed.

Action by R. M. Hays & Bro. against Western Union Telegraph Co. From judgment for plaintiffs, defendant appeals.

*Messrs. Evans & Finley,* for appellant, cite: *Actual loss based upon changes in market is rule of damages:* 41 Ia., 458; 44 N. Y., 263; Joyce on Dam., sec. 1411. *And for error in transmission the measure is increase of loss:* 25 Ency., 1 ed., 850; 67 Ia., 631; 124 U. S., 444. *Expected profits from resale too remote:* 1 Col., 230; 33 Wis., 558; 124 U. S., 444; 98 Mass., 232; 25 Ency., 848; 81 La., 285; 100 N. C., 300; 2 Joyce on Dam., sec. 1410; 19 S. C., 228; 35 L. R. A., 553; 62 S. W., 119; 18 S. E., 287; 40 S. C., 528; 81 Ga., 285. *As to waiver of stipulation as to filing claim:* 11 S. E., 874; 105 U. S., 359; 28 Ency., 1 ed., 528.

*Messrs. Sheppards & Grier,* contra. *Mr. Grier* cites: *Where profit to be made is only thing purchased, that is measure of damages:* Wood's Mayne on Dam., 82; Hale on Dam., 268; 5 Ency., 32; 28 Law ed., U. S., 110; 58 S. C.,

373. *Nonsuit should not be granted even on showing of non-compliance with stipulation in contract:* 52 S. C., 224, 589. *Waiver of right to stand on stipulation in contract may be shown by acts:* 152 Ill., 484; 40 Mo. App., 202; 78 Miss., 11; 126 N. C., 932; 51 Mo. App., 482; 63 Mo., 314; 56 Am. R., 550; 52 S. C., 227; 54 S. C., 603; 85 Ga., 425; 54 Am. St. R., 554; 17 Mo. App., 257. *Provision limiting time for filing claim for damages is void:* 25 Ency., 788; 36 L. R. A., 711; 25 L. R. A., 406; art. IV., sec. 3, Con. 1895; 26 S. C., 267; 55 S. C., 152.

October 4, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiffs, R. M. Hays & Brother, were dealers in horses and mules at Greenwood, S. C. A. C. Hays, the junior partner, was sent to the St. Louis stock market with the understanding that he should purchase only after he had telegraphed prices and received instructions from his senior, R. M. Hays. On January 1, 1901, A. C. Hays delivered to the defendant, Western Union Telegraph Company, in St. Louis, for transmission to R. M. Hays at Greenwood a telegram in these words: "Fourteen half hands, ninety-five; fifteen hands, one hundred and five; fifteen half hands, one hundred seventeen fifty; pair for self, sixteen hands, two sixty; all little less quality than before." As delivered to R. M. Hays the telegram read 'one hundred and seven fifty, instead of one hundred and seventeen fifty, as written; and R. M. Hays was thus led to believe that mules fifteen and one-half hands high could be bought for $107.50 instead of $117.50. Acting on this impression, he telegraphed his partner to buy twenty-four mules of that size. R. M. Hays testified he was induced by the price to purchase mules of fifteen and a half hands, instead of the cheaper mules of fifteen hands, and that he could have sold in Greenwood the cheaper mules at about the same price, the market price there for the two classes of mules being about

the same.   The plaintiffs claimed of the defendant damages
of $10 for each of the twenty-four mules purchased, being
the difference between the price stated in the telegram as
delivered and the price actually paid.

In sending the messages, plaintiffs agreed to the printed
contract: "That the company will not be liable for damages
or statutory penalties in any case where the claim is not pre-
sented in writing within sixty days after the message is filed
with the company for transmission."   The claim was not
presented in writing until more than sixty days had elapsed.

The defendant moved for a nonsuit; first, because there
was no proof of any direct loss to the plaintiffs arising from
the mistake of transmitting the telegram, but only of loss of
profits; and, second, because plaintiffs did not present claim
in writing within sixty days after the filing of the message
for transmission, as stipulated in his agreement.   The refusal
of the motion for a nonsuit is made the first ground of
appeal.

In *Howard* v. *Stilwell etc. Manufacturing Co.,* 139 U. S.,
199, 35 L. ed., 147, the Supreme Court of the United States,
after stating the rule that contingent or remote profits are
not recoverable, says: "But it is equally well settled
that the profits which would have been realized had
the contract been performed, and which have been
prevented by its breach, are included in the damages to be
recovered in every case where such profits are not open to
the objection of uncertainty or of remoteness, or where
from the express or implied terms of the contract itself, or
the special circumstances under which it was made, it may
be reasonably presumed that they were within the intent
and mutual understanding of both parties at the time it was
entered, into."   The general doctrine is well expressed in
*Griffin* v. *Colver,* 69 Am. Dec., 718 (N. Y.) : "The broad
general rule in such cases is that the party injured is entitled
to recover all his damages, including gains prevented as well
as losses sustained; and this rule is subject to but two con-
ditions: the damages must be such as may fairly be supposed

to have entered into the contemplation of the parties when they made the contract—that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed." See, also, *Jenkins* v. *Railway Co.,* 58 S. C., 373, 36 S. E., 703. The principle thus clearly stated is generally recognized, but there is often great difficulty in its application. In the case now under consideration, the telegram which defendant undertook to transmit indicated on its face the purpose to give information of the price of live stock by size, for the word "hands," as a term of measurement, is not usually applied otherwise. Such a message also gives notice that it will be used as a basis of business action or non-action, and that loss or profit is liable to result. Indeed, the sole purpose of such telegrams is obviously to make profit by purchase and sale, and this purpose was within the understanding of the plaintiffs and the telegraph company when it undertook to deliver the message. Accordingly the rule as to telegraph companies is thus stated in 27 A. & E. Ency. Law, 1069 : "When a message announcing prices, sent in contemplation of a trade, is erroneously transmitted, the party injured through acting upon the erroneous message may recover the amount of his actual loss caused by the decrease in the price he obtained, or, in case he is a purchaser, the increase in price he is obliged to pay in consequence of the error." *Western Union Telegraph Co.* v. *Dubois,* 128 Ill., 248, 15 Am. St. Rep., 109.

These views are not inconsistent with *Sitton* v. *McDonald,* 25 S. C., 68, where the profits claimed were not in the contemplation of the parties; nor with *Mood* v. *Telegraph Co.,* 40 S. C., 524, 19 S. E., 67, where the special damages were held not sufficiently alleged; nor with cases like *Western Union Telegraph Co.* v. *Hall,* 124 U. S., 444, 31 L. ed., 479, where there was failure to deliver the telegram and hence no purchase based thereon, leaving it entirely conjectural whether the plaintiff would have purchased if the tele-

gram had been delivered and would have subsequently sold on the rising market.

Here there was evidence of an actual purchase on the faith of the telegram, and an actual loss of a profit which would have been made if the telegram had been correctly transmitted.

In *Wallingford* v. *Telegraph Company,* 53 S. C., 410, 31 S. E., 275, the facts were entirely different, and that case is applicable only by analogy. There the defendant demurred to a complaint for damages, which alleged sale of a carload of mules would have been directed by one partner in answer to a telegram from another stating offer of purchase, if the telegram had been delivered; whereas, by reason of the failure to deliver the telegram, the firm was forced to hold the mules for some time at considerable expense, and then to sell for less than the price mentiond in the telegram. The mules were at Sheridan, Indiana, and the undelivered telegram related to an offer in that market. The Court said: "The measure of damages in such a case as this is the difference between the market value of such mules on the same terms at the time the message should have been delivered, and the price offered, in case such market value was less than the price offered. By market value is meant the price that could have been obtained in open market on fair competition on similar terms at Sheridan, Indiana, or, if there was no market price there, at any convenient market for mules, where there was at the time a market price." It is not necessary that the plaintiff should bring home to the defendant knowledge of the market conditions. In the case now under consideration, the market price of the mules in St. Louis, given in the telegram as delivered, was $10 less for each mule than the actual market price in St. Louis which plaintiffs had to pay. There was evidence to the effect that plaintiffs would not have bought the mules they did buy if the telegram had been correctly transmitted, but would have bought the smaller mules at a price $10 lower for each, which would have answered the same purpose in the conduct

of the plaintiffs' business, as they were worth in the Green-
wood market, where they were to be sold, as much as the
larger mules.   This means that the plaintiffs paid out $240
on the faith of the telegram, and that they derived no sub-
stantial profit or advantage from the payment of this sum.
Therefore, whether we regard the effect on the plaintiffs as a
loss of profit, or the fruitless expenditure of money on the
faith of the telegram, the result is the same.   The difference
in the price paid and the price stated in the telegram as
delivered was, under the facts of this case, the true measure
of damages.

The nonsuit could not have been granted on the second
ground, because the plaintiffs had the right to prove in reply
waiver or estoppel as to the stipulation that the claim should
be presented in writing within sixty days.   *Copeland* v.
*Insurance Co.,* 43 S. C., 26, 20 S. E., 764.

The charge of the Circuit Judge on the subject of profits
was in accordance with the views above expressed in consid-
ering the motion for nonsuit, and was, therefore, not
erroneous.

The Circuit Judge refused the motion to direct a verdict
made on the ground that it was affirmatively proved that
the claim had not been presented in writing within sixty
days, and that there was no evidence of waiver.   The
jury were instructed that the contract requiring the
claim to be presented in writing within sixty days
was valid, and they were left to decide whether there was
sufficient evidence of waiver of the stipulation.   The ques-
tion is, whether there was any evidence of waiver, for if
there was no such evidence the jury should have been
instructed to find for the defendant.

Waiver is a voluntary relinquishment of a known right,
and it does not require a new contract upon consideration
to be effectual against the stipulation that the claim should
be presented within sixty days.   *Kingman* v. *Insurance Co.,*
54 S. C., 599, 32 S. E., 762.

The transactions relied on as constituting waiver were

altogether between the plaintiffs and Calhoun, the agent of
the defendant at Greenwood, and hence it is necessary to
determine how far the defendant should be bound by his
course of conduct.    A mere local telegraph operator whose
duty is confined to the receipt, delivery and transmission of
messages, cannot bind his principal by waiving its rights as
to claims presented against it.    *Railway Co.* v. *Brown*, 24
S. W., 918 (Texas) ; 13 A. & E. Ency. Law, 392 ; 4 Elliott
on Railroads, sec. 1524.    This is in accord with analogous
cases in this State.    *Petrie* v. *R. Co.*, 27 S. C., 63, 2 S. E.,
837 ; *Garrick* v. *R. R. Co.*, 53 S. C., 448, 31 S. E., 334.
In this case, Calhoun describes himself as "manager of
the Western Union Telegraph Company at Greenwood."
While too much importance should not be attached to an
official designation, he testifies to the important fact that
the company entrusted to him the duty and responsibility of
getting up all possible information in such cases.    After this
claim was presented in writing, the company corresponded
with him about it, but gave no special instructions to obtain
further information.    This correspondence furnished ample
opportunity for the company to notify him not to exercise
his usual duty of obtaining additional information from the
plaintiffs.    In the absence of such instructions, Calhoun was
fully justified in acting on his general authority to seek
information as to the merits of the claim as agent of the
company, and defendant will be chargeable with the result
of his action in that regard.

Waiver of contracts of forfeiture similar to this have
been placed on several different grounds : (1) If some state-
ment or proof has been furnished indicating the nature and
grounds of the claim within the time prescribed, good faith
requires notice of the defect relied on, so that it may be
remedied in time, and failure to give such notice is waiver
of the defect. *McBryde* v. *Insurance Co.*, 55 S. C., 589, 33 S.
E., 729 ; *Davis Shoe Co.* v. *Kittanning Insurance Co.*, 21 Am.
St. Rep., 904 ; *Rheims* v. *Standard Fire Insurance Co.*, 20
S. E., 670 (W. Va.)    (2) The party to be charged waives

the forfeiture if, with knowledge of all the facts, he requires the claimant to do some act or incur some trouble or expense inconsistent with the position that the contract had become inoperative in consequence of the breach of its conditions. *Madsdcn* v. *Phoenix Fire Ins. Co.,* 1 S. C., 24; *Kingman* v. *Insurance Co.,* 54 S. C., 603, 32 S. E., 762; *Trippe* v. *Provident Fund Society,* 22 L. R. A., 432 (N. Y.); *Hudson* v. *Northern Pacific Ry. Co.* (Ia.), 54 Am. St. Rep., 550.   In this proposition there is also the element of estoppel, and it is applicable to all contracts for forfeiture.   (3) Where the statement or proof is presented after the time limited by the contract, and the claimant thereafter does nothing, and incurs no expense or trouble in consequence of any demand of the party to be charged, yet waiver of the form of the claim and of the time limit will be implied, if the statement or proof is retained and considered on its merits without notice that the time limit, or a lack of written demand in proper form, will be relied on.   *McBryde* v. *Insurance Co.,* 55 S. C., 593, 33 S. E., 729; *Western Union Telegraph Co.* v. *Stratemeier,* 32 N. E., 871 (Ind.); *Illinois Central R. R. Co.* v. *Bogard,* 27 South., 879 (Miss.); *Wabash R. R. Co.* v. *Brown,* 39 N. E., 273 (Ill.); *Commercial Assurance Co.* v. *Hocking,* 115 Pa. St., 407, 2 Am. St. Rep., 562.

It is to be borne in mind that stipulations as to the form of such claims and the time within which they shall be presented, do not relate to the merits.   They do not affect the consideration or condition upon which liability or risk is assumed, nor are they contracts of exemption from particular risks or liabilities.   These things, the consideration, the exemption from liability, and the conditions of liability, form the very basis of the contract and are of its substance, and it is not reasonable to suppose known rights as to them will be lightly relinquished.   Therefore, in many such cases waiver is based on the fact that the claimant has changed his position as a result of the conduct of the party to be charged. In this view, it was held in *Joye* v. *Insurance Co.,* 54 S. C., 375, 32 S. E., 446, that the promise of the president of an

insurance company to pay the loss did not constitute waiver, as it was followed by another letter, denying liability because the consideration of the policy had not been paid, no change in the condition of the insured having taken place in the meantime. On the contrary, provisions as to the form of claims and the time of presentation are intended only to secure the orderly conduct of the business of the company by giving it an opportunity to investigate while the facts may be ascertained, and hence any indication given to the claimant of its election to consider the claim on its merits will be regarded evidence of waiver.

There was evidence here that before the expiration of sixty days, the plaintiffs notified defendant's agent and manager at Greenwood of the loss, and that they would hold the company liable unless it should turn out that Calhoun, the Greenwood agent, had made a mistake. In these circumstances, long after the verbal notice, and when the telegraph company had had the written claim in hand eight or ten days, Calhoun, on behalf of the company, sought of the plaintiffs further information about the merits of the claim. The evidence does not disclose any expression of intention to claim the time limit during these negotiations or at any time until the answer was filed. The failure of the defendant to object that the first notice was not in writing, its subsequent receipt and retention of the written claim without objection after the time had expired, and the request for further information as to the merits while it had the written claim in hand, taken together, furnished evidence of waiver sufficient to go to the jury.

Under the views above expressed as to the scope of the duties and responsibilities imposed by defendant on Calhoun, its Greenowod agent, it was manifestly competent for the plaintiffs to prove the notice and presentation to him of the claim, and his demand for information concerning it.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY, *dissenting.* This is an action for damages alleged to have been sustained by the plaintiffs on account of an error in the transmission of a telegram. At the time hereinafter mentioned, the plaintiffs conducted the business of a general sale stables for the sale of horses and mules at Greenwood, S. C. On the 18th of January, 1901, A. C. Hays delivered to the defendant at East St. Louis, the following telegram to be transmitted to R. M. Hays, the other member of the firm, to wit: "Fourteen half hands ninety-five, fifteen hands one hundred and five, fifteen half hands one hundred and seventeen fifty—pair for self, sixteen hand two sixty, all little less quality than before."

The defendant erroneously, however, sent the following telegram to R. M. Hays: "Fourteen half hands ninety-five, fifteen hands one hundred and five, fifteen half hands one hundred and seven fifty, pair for self sixteen hands two sixty all little less quality than before."

R. M. Hays telegraphed to A. C. Hays: "Buy twenty-four mules fifteen two hands, pair sixteen hands for farm, get nice colors fully half mare mules, give Thomson preference, wire when ship."

The mules were purchased, shipped to Greenwood and sold by the plaintiffs. On cross-examination, R. M. Hays testified as follows: "Q. When you speak of your loss being so much, what do you mean by that is that you made that much less than you expected to make? A. I didn't mean that. I meant to say that I could have used fifteen hand mules and sold the same mules at the price they were bought at. Q. Did you as a matter of fact lose a dollar on this car load of mules? A. I couldn't state that as a fact. Q. Would you say you lost a dollar? A. No, sir, I never figured it out; I stated this: I said that fifteen hand mules at $105 sold for the same money on the market as fifteen and one-half hand mules."

The jury rendered a verdict in favor of the plaintiffs for $240.

The appellant's ninth exception assigns error on the part of his Honor, the presiding Judge, as follows:

"In charging the jury in accordance with the second, third, fourth and fifth requests of the plaintiffs, that profits which are direct and immediate fruits of a contract may be recovered; the errors being that the contract out of which the profits might have come was not before the Court for consideration, and that there was no pretence or claim on the part of the plaintiffs that they had actually lost anything by giving $117.50 per head for the mules, but only that they had failed to make what they would have made by buying them at $107.50."

Those requests are as follows:

"2. Profits which are the direct and immediate fruits of a contract can be recovered. There are many cases in which the profits to be made by the bargain is the only thing purchased; and in such cases the amount of such profits is the measure of damages.

"3. Where the profits are the direct and immediate fruits of the contract, they are free from the objection of being speculative, and can be recovered.

"4. Whenever it is shown by the evidence that a telegraph company has by its fault in the transmission of a message caused the sender to fail to make some gain or profit which he otherwise would have made, and the amount thereof is shown with certainty by the evidence, the gain or profit thus prevented is a proper element of damages in an action against the company for its breach of contract.

"5. Damages may be recovered for losses sustained or gain prevented, when they are the proximate and certain results of the defendant's fault."

There was no testimony that the defendant had notice of the fact that the first message related to the purchase of mules, nor that the mules were purchased for resale, nor as to the market value of the mules at the time the plaintiffs' right of action accrued. His Honor, the presiding Judge, erred in the test for the admeasurement of damages which

he submitted to the jury, for the reason that *profits* were not a proper element of damages in this case.   In the leading case of *Hadley* v. *Baxendale,* 9 Exch., 341, the following general rules are indicated : "First. That damages *which* may fairly and reasonably be considered as naturally arising from a breach of contract according to the usual course of things, are recoverable.   Second. That damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable unless the special circumstances are known to the person who has broken the contract."   Cited with approval in *Sitton* v. *McDonald,* 25 S. C., 68.

In the earlier cases, both English and American, there was a general concurrence in excluding profits in actions of tort as well as on contract, which merely might have been realized had the injury not been done or the contract been performed.   8 Enc. of Law, 617.   "Profits which depend upon the fluctuations of the markets and the hazards and chances of business, are considered too contingent and speculative to enter into a safe or reasonable estimate of damages. Thus any supposed successful operation the party might have made, if he had not been prevented from realizing the proceeds of the contract at the time stipulated, is a consideration not to be taken into the estimate of damages; for, besides the uncertain and contingent issue of such an operation in itself, it has no legal or necessary connection with the stipulations between the parties, and cannot, therefore, be presumed to have entered into their consideration at the time of contracting."   8 Enc. of Law, 618-9.

In the case of *W. U. Tel. Co.* v. *Grain Co.,* 63 L. R. A. (Neb.), 803, it was held, that "where the negligent delay of a telegraph company in the delivery of a message delivered to it for transmission by the plaintiff, results in the loss to the plaintiff of a sale of a quantity of corn at a price above the market value of the corn at the time and place it would have been delivered had such sale been made, the measure of damages is the difference in value between the price the

plaintiff would have received for the corn had the sale been made and the market value of the corn at such time and place of delivery, unaffected by the price at which the plaintiff may have disposed of the corn after that time." In discussing the question of profits, the Court uses this language: "In such cases the general rule is that, so far as it can be done by money, the injured party is to be placed in the same situation in which a performance of the contract would have placed him. But it would be impossible to follow the labyrinth of remote results and consequences of a breach of contract and determine either the ultimate situation of the party as affected thereby, or what such situation would have been had the contract been performed. The law, therefore, takes into account only proximate results and disregards such as are remote, or are the product of intervening or independent causes. Hence the situation of the injured party which forms the basis of the comparison must be his situation when the breach of contract occurred, and before remote or independent causes had intervened to change it. His situation after that time can never be material as an ultimate fact in the case, because after the intervention of such causes it can never be known, with any reasonable degree of certainty, to what extent it is due to causes only remotely connected with the breach of contract or wholly independent of it."

Whatever may be the rule elsewhere, the Courts of this State have followed the earlier decisions, both English and American, which held that anticipated profits could not be recovered, for the reason that they were indefinite, uncertain and too remote. In the case of *Sitton* v. *McDonald*, 25 S. C., 68, the plaintiff carried on the business of buying old cotton-ties and manufacturing them into new ones. In the operation of its machinery it used a peculiar kind of punch which could not be repaired by a blacksmith. The plaintiff carried it to the defendant, who undertook to repair it. The defendant failed to carry out its contract and the plaintiff brought an action for $1,000 damages. Upon the trial the plaintiff offered to prove as damages the amount of profits

he would have earned in the ordinary employment of the punch during the time it was detained by the defendant. The defendant objected to the testimony on the ground that such damages were too speculative, remote and contingent. The objection was sustained. The Court said: "We are aware that there are circumstances under which one who, by breach of contract, has delayed a sale until there is a fall in the marketable value of the property, may be charged as damages with the difference in price; but we do not see that such principle applies to a case where the only question is as to more or less profits, which as a whole as profits are excluded as too contingent, remote and speculative." In commenting on the case of *D'Orval* v. *Hunt,* Dudley, 180, the Court uses this language: "In this latter well considered case, it was held that 'for the breach of an executory contract, without fraud or imposition, the jury can only give such damages as fairly and naturally result from it and which can be measured by a pecuniary standard; remote and consequential damages cannot be allowed.' "

We desire to call special attention to the fact that profits were excluded in the case of *Sitton* v. *McDonald,* 25 S. C., 68, on the ground that they were too *contingent, remote and speculative.* Are anticipated profits in the case under consideration less contingent, remote and speculative than in the case just mentioned? They are in their very nature problematical, conjectural, uncertain, indefinite, speculative and remote. They are dependent upon many contingencies—fluctuations in the market, caprice of purchasers, value of services employed in selling the articles, interest on capital invested, and various other circumstances that cannot be contemplated with any degree of certainty.

The rule for the admeasurement of damages is correctly set forth in *Wallingford* v. *Tel. Co.,* 53 S. C., 410, 31 S. E., 275. In that case the plaintiff brought an action for damages on account of the failure on the part of the telegraph company to deliver seasonably a message whereby the plaintiffs lost the sale of a lot of mules. Mr. Justice Jones thus

states the principle in the admeasurement of damages: "The measure of damages in such case as this, is the difference in the market value of such mules on same terms, at the time the message should have been delivered and the price offered, in case such market value was less than the price offered."

It certainly cannot be successfully contended that the plaintiffs are entitled not only to profits but likewise to the difference in the amount paid for the mules and their market value at the time their cause of action accrued. The law does not allow both measures of damages in one case. We, therefore, conclude that either the rule for the admeasurement of damages laid down in *Wallingford* v. *Tel. Co.*, 53 S. C., 410, 31 S. E., 275, is erroneous or the principle announced in the opinion of Mr. Justice Woods is wrong. The rule stated in *Wallingford* v. *Tel. Co.*, 53 S. C., 410, 31 S. E., 275, should, for a stronger reason, be applied in this case, because the error in transmitting the telegram did not prevent the plaintiffs from becoming the purchasers of the mules, nor deprive them of the opportunity of making whatever profit they saw fit by a resale of the mules. The direct and proximate result of the error in sending the message was to cause the plaintiffs to purchase the mules for which they had to pay a larger sum than they contemplated as the purchase money thereof, and the measure of their damages was the difference in the market value of the mules at the time their right of action accrued and the amount they were compelled to pay by reason of said error. This mode of admeasuring damages is more certain than determining the amount of anticipated profits supposed to have been lost by the error. In 8 Enc. of Law, 611, it is said: "Where the damages may be estimated in more than one way, that mode should be adopted which is most definite and certain."

The quotation which Mr. Justice Woods makes from 27 Enc. of Law, 1069, shows, that when the person affected by an error in the transmission of a message is the purchaser, he is entitled to recover the increase in price which he is obliged to pay in consequence of the error, but it does not

sustain the doctrine that the purchaser has the right to recover lost *profits*.

As I think the judgment of the Circuit Court should be reversed, I dissent from the opinion of Mr. Justice Woods.