6700

## McMILLAN & SON v. INSURANCE COMPANY OF NORTH AMERICA.

## McMILLAN & SON v. PHILADELPHIA UNDERWRITERS.

1. INSURANCE—IRON SAFE CLAUSE—EVIDENCE—ISSUES.—That a book of cash sales was not in use at the time of the fire and was last seen in an iron safe, where it was usually kept, and that the books in the iron safe were delivered to the adjuster, is sufficient evidence to carry to the jury the issue whether the book was delivered to the adjuster or lost in the fire.

2. IBID.—EVIDENCE—PRESUMPTIONS.—If books are shown to have been actually kept and securely locked in an iron safe, the presumption

is they continued there, and this presumption continues until it be shown they were taken out.

3. Issue—Witness.—Whether the statement of a witness in an affidavit or its modification by his evidence in the case is true, is for the jury.

4. Insurance—Iron Safe Clause.—Failure to substantially comply with the iron safe clause would defeat the policy, in the absence of waiver, whether the result of design or accident. If books kept in an iron safe, containing an expense account in connection with a cash deposit book, furnish the data for a fair estimate of the cash sales, the terms of the iron safe clause in a policy of fire insurance are substantially complied with. That some parol evidence was necessary to make such showing complete does not invalidate it.

5. Ibid.—Waiver.—There was some evidence in this case of conduct on the part of the adjuster inconsistent with the idea that the absence of the cash sales book would be regarded as a forfeiture of the policy, and tending to show waiver of the nonwaiver agreement. Mr. Justice Woods *dissents.*

6. Rehearing refused.

Before Klugh, J., Marion, November, 1906. Affirmed.

Two cases (1) M. L. McMillan & Son v. Insurance Company of North America, and (2) M. L. McMillan & Son v. Philadelphia Underwriters. From judgment for plaintiff, in both cases, defendants appeal.

*Messrs. King, Spalding & Little,* and *W. F. Stackhouse,* for appellants, cite: *Court should direct a verdict upon uncontradicted proof of breach of condition in absence of proof of waiver:* 68 S. C., 378. *The iron safe clause must be substantially complied with:* 98 Ga., 754; 115 Ga., 454; 128 Ala., 451; 56 S. E., 506; 35 Ins. Law Jour., 282; 32 Id., 764; 35 Id., 309; 54 S. C., 371. *Failure to comply with this clause by oversight forfeits policy:* 19 So., 132; 77 S. W., 424; 37 S. W., 95; 60 S. W., 661; 67 S. W., 153. *There was no evidence of waiver of non-waiver agreement:* 98 Ga., 754; 115 Ga., 454; 28 Ala., 451; 56 S. E., 506; 35 Ins. Law Jour., 282; 32 Id., 764; 35 Id.,

309; 54 S. C., 371.  *Breach of iron safe clause invalidates policy on building as well as on goods:* 56 S. E., 506.

*Messrs. Harry Mullins* and *M. C. Woods,* contra, cite: *Affidavit under honest mistake, that cash book was burned, does not vitiate policy:* 76 S. C., 76.  *An adjuster by his acts may waive a non-waiver agreement:* 61 Mo. App., 352; 46 S. C., 295; 70 S. C., 295; 34 S. W., 476; 27 Am. R., 60; 20 N. E., 18; 51 S. W., 755.  *Expense account and deposit book made substantial compliance with iron safe clause:* 60 S. W., 393; 19 Cyc., 761; 45 S. W., 61, 832; 28 S. W., 716; 35 S. W., 1060; 180 U. S., 132; 21 S. E., 1006.  *As to loss of books by accident or design, and whether the insured acts in good faith or with bad design:* 12 N. Y., 81; 84 Fed., 314; 13 S. W., 1103; 18 So., 928; 29 N. W., 411; 13 Am. R., 405; 88 Ill., 574; 34 S. W., 462.

The opinion in this case was filed October 11, 1907, but remittitur held up on petition for rehearing until

November 2, 1907.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  The plaintiffs, in the first named case, recovered judgment against defendant for $1,745.29 on a policy of insurance issued February 9, 1903, on a stock of general merchandise, furniture and fixtures at Mullins, S. C., which was destroyed by fire December 27, 1903; and in the second named case recovered judgment against defendants for $1,734.00 on a policy of insurance issued September 4, 1903, on the same stock of general merchandise at Mullins, S. C., destroyed by fire as stated.

These cases were heard together in this Court, as they involved substantially the same facts and are controlled by the same principles of law.

The main controversy on the trial and on the appeal relates to the question whether the policies were forfeited

by failure to comply with the "iron safe clause." This clause provides that the assured shall take a complete itemized inventory of the stock once a year, keep a set of books which shall clearly and fully present a complete record of the business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory and during the continuance of this policy, and will keep such books and inventory securely locked in a fire-proof safe at night and at all times when the building mentioned in the policy is not actually open for business; or, failing in this, the assured will keep such books and inventory in some place not exposed to a fire which would destroy the aforesaid building; further providing, that a failure to provide such set of books and inventory for the inspection of the company shall render the policy null and void and constitute a perpetual bar to any recovery thereon.

The assured kept an iron safe in their store room, and kept a set of books, consisting of an inventory book showing inventory taken January 5, 1903, an invoice book, a journal, cash book and ledger. Account of cash sales from January 5, 1903, to August 17, 1903, was kept in one book. This book being filled, they entered cash sales in the journal from August 17th to September 9th, and thereafter to the time of the fire in a separate book. The defendant concedes that all the books were delivered to it after the fire, except the book showing cash sales from January 5th to August 17th. The failure to deliver this book is the point relied on as in violation of the iron safe clause. The plaintiff, Joseph A. McMillan, managing partner, and the clerk, John McMillan, testified that the last time they saw this book it was in the safe where it was usually kept. Joseph McMillan testified that after the fire the books were taken from the safe and deposited in the Bank of Mullins, and were delivered to the adjuster of defendant on December 31, 1903; that until the adjuster called his attention to the absence of entry of cash sales from January 5th to August

17th he thought he had delivered all the books to the adjuster. A. L. DeRossett, the adjuster, testified that no such cash book was ever delivered to him; that Joseph A. McMillan told him that it was destroyed in the fire, and gave him an affidavit to that effect on February 20, 1903, which was introduced in evidence. Thus an issue was raised for the jury as to whether such cash book was ever in the hands of the adjuster. On this point the Court charged, in effect, that if plaintiff did have a complete set of books and turned them over to the adjuster, that was a compliance with the policy. It is contended that there was error in this charge, as there was no evidence on such issue. The charge was correct, as a matter of course, and as there was some evidence tending to show that the book was not in use at the time of the fire, and was last seen in the safe where it was usually kept by those in charge of it, and that the books in the safe after the fire were delivered to the adjuster, it was for the jury to say whether the book was delivered to the adjuster or was destroyed in the fire.

In this connection, it is relevant to notice the exception which complains that the Court erred in charging: "If you find from the evidence that the books were actually kept and securely locked in an iron safe, then the law raises the presumption that having once been in the safe they continued there, unless it be shown that they were taken out, on the general rule that where any state of facts is shown to be in existence, the law presumes that that state of facts continues until it is shown that it has been changed." As it is manifest that an inanimate object like a book would remain in an iron safe where it was securely locked until removed by some agency, we fail to see how the charge could be prejudicial to appellant. Under this charge, if the jury should accept the adjuster's statement that the cash book in question was not delivered to him by McMillan, and should accept McMillan's statement that he delivered to the adjuster all the books found in the safe after the fire, then the inevitable inference would

be that the book was not in the safe at the time of the fire. But, on the other hand, if the jury should accept the statement of the McMillans that the book was last seen by them in the safe before the fire, and there is nothing in the circumstances to indicate removal by accident or design before the fire, then the necesary inference would be that the book was in the safe at the time of the fire; and if nothing in the safe was destroyed by the fire, and if McMillan delivered to the adjuster all the books in the safe after the fire, the inference would be that the cash book was delivered to the adjuster. The statement of Joseph McMillan to the adjuster during the negotiations for a settlement, that the book was destroyed in the fire, and his affidavit to that effect on February 20th, drawn by the adjuster, may have been regarded by the jury as the mere expression of McMillan's opinion or belief that such was the only way he could account for the absence of the book if he did not deliver it to the adjuster, for at folio 227 of the Brief, on the trial of the second named case above, the adjuster testified that McMillan said, "He presumed the book got burned."

3        But if the statement of McMillan to the adjuster was meant to convey the idea that he actually knew that the book was destroyed in the fire while out of the safe, still it was for the jury to decide between the truth of that statement and his positive testimony on the stand that he last saw the book in the safe.

In the first named case the Court, in part, instructed the jury: "If you find that they substantially complied with that provision, so that the defendant has not been either defrauded or put to any disadvantage in its efforts to ascertain the truth in reference to the character and condition of the property at the time of the fire, and should find that the plaintiffs acted in good faith, even though there might accidentally by some possibility have been a defect and some book and paper was missing, not by plaintiff's design, but as the result of accident; and yet that the plaintiffs furnished to the defendant all the evidence and

information, that such a part of their set of books would have furnished, so that the defendant was not put at any disadvantage, and that the loss of the book or paper was not through the fault of the plaintiffs, then that would amount to a substantial compliance with that clause of the policy;" and in the second named case the jury were instructed: "A substantial compliance with that (iron safe clause) is required, and if by chance, by accident, there should apparently be a failure to comply with that provision, if by accident some book, or some of the books, should be lost without any design on the part of the parties insured, if there still remains the means to ascertain accurately and fully the value of the stock, so that the insurance company has suffered no disadvantage by reason of the loss, that loss would not amount to a vitiation of the policy."

These and other extracts from the charge on this subject are made the basis of several exceptions, but a consideration of the foregoing will involve all that is material on this branch of the charge. The object of the iron safe clause is to secure the means of showing, with reasonable ease and certainty, the extent of the loss by fire destroying the stock of merchandise, and it serves to protect the insurance company against an ignorant or fraudulent overestimate of the loss by the assured. The law, however, does not require a strict literal compliance with this clause by the assured, but is satisfied by a substantial compliance which reasonably meets the end in view. *Liverpool, etc., Ins. Co.* v. *Kearney,* 21 Sup. Ct. Rep., 327; *Western Assurance Co.* v. *Redding,* 15 C. C. A., 619; *Western Assurance Co.* v. *McGlathery,* 115 Ala., 213, 67 Am. St. R., 26; *North British & Mercantile Ins. Co.* v. *Edmundson,* 52 S. E. Rep., 350. In 19 Cyc., 764, cases are cited to support the text that "if the insured has complied with the requirements by taking an inventory and keeping books, the fact that some of such books were destroyed will not invalidate the policy where the missing information is supplied by other satisfactory means." We do not construe the charge under considera-

tion to mean, as contended by appellant, that a failure to comply substantially with this clause would not defeat the policy if the failure was the result not of design but of accident. We think it clear that a failure to substantially comply with the iron safe clause would defeat the policy, in the absence of a waiver, whether the result of design or negligence. The Court was endeavoring to convey to the jury his view of what would constitute substantial compliance, and the charge must be construed with reference to the testimony touching compliance. It was not denied that plaintiff fully complied with all the requirements of the clause in question, except as to one disputed particular, whether there was a failure to produce the book showing cash sales for a part of the time covered by the policy. The charge, therefore, had reference to this alleged deficiency alone. The vital question was, whether there could be a substantial compliance in the absence of the missing cash book. The import of the charge thus considered was, that if the loss of this cash book, or the failure to produce it, was accidental and not the result of design or fault, and there still remained the means to ascertain accurately and fully the value of the stock, so that the insurance company would suffer no disadvantage by reason of the loss, there would be a substantial compliance. As the policy does not require any particular set of books, or any particular method of keeping books, it is manifest that any set of books or method of bookkeeping which would enable one of average skill and intelligence in such matters to make a reasonably accurate estimate of the extent of the loss would answer every purpose of the stipulation. The policy further permits books to be kept out of the safe, in some place not exposed to a fire which would destroy the building in which the business was being conducted. From this it must result that if the books and inventory kept in the safe, together with books kept elsewhere, would furnish to a person of average intelligence the data for a fair estimate of the loss, the terms of the policy would be substantially met, even though some par-

ticular book of the set kept in the safe should be missing. To this extent there is no reasonable ground to doubt the general correctness and applicability of the charge.    In this case the insured supplied the information contained in the missing book by reference to the expense account as shown by the books remaining in the safe and the cash deposit account of plaintiff's as shown by the books kept by the Bank of Mullins, with testimony that it was plaintiffs' custom to make deposit in the bank of the daily cash sales less such items for expenses as were paid out during the day. By this method the cash sales from January 5th to August 17th were shown to be $1,609.16.

Was it proper to submit this issue to the jury under the instructions to determine whether there was a substantial compliance with the poyicy? We think so. Under a strict and literal construction this would not be a compliance, as the book of the Bank of Mullins was not a book kept by the assured in their business as merchants, but under a liberal construction with a view to substantial justice between the parties to this contract of indemnity, the plaintiffs' cash deposit account kept by the Bank of Mullins for the mutual benefit of the bank and its depositors afforded, in connection with the expense account shown by the plaintiffs' books and the custom of plaintiffs in making their deposits, a reasonably accurate and satisfactory means of showing cash sales by book entries. *Insurance Co.* v. *Heflin* (Ky.), 60 S. W., 393. The jury under the charge must have been satisfied of the accuracy of this method and that the defendant suffered no disadvantage thereby. The fact that some parol testimony was necessary to make the showing by book entries complete is not a fatal objection, as under any ordinary system of bookkeeping some reliance must be placed upon parol testimony in explanation to show stock on hand at any particular time, for in every case such factors as appreciation or depreciation of invoice price of stock, the rate of profit on cash and credit sales, the honesty and accuracy of the bookkeeper, must be taken into account.

The defendant's adjuster arrived at Mullins on December 30 or 31, 1903, after information as to the fire, and on December 31, 1903, the parties entered into what is known as the non-waiver agreement, which stipulates: "That any action, inquiry, investigation or examination undertaken by the said parties of the second part in investigating, developing or determining the cause, origin or spread of fire, occasioning the damage, if any, suffered by said claimant, or in investigating or ascertaining the amount, nature or extent of the 'said loss and damage, if any, to the property of the parties of the first part, caused by fire alleged to have occurred on the 27th day of December, 1903, to property situated in Mullins, County of Marion, State of South Carolina, shall not in any manner or to any extent whatsoever admit the liability of the parties of the second part for said loss, or waive, avoid or invalidate any of the conditions, exceptions, or forfeitures of the policies of the parties of the second part, held by the parties of the first part, and shall not waive, avoid or invalidate any rights, known or unknown, or any privilege or exemption from liability by either of the parties to the agreement. The purpose of this agreement is to preserve without estoppel, waiver or forfeiture, the rights of all parties hereto, and provide for and permit an impartial and full investigation of the alleged fire, and the just determination of the amount of loss or damage, if any, without regard to or admission of any liability of the parties of the second part."

With respect to this agreement the Court at request of appellant charged: "A written paper styled non-waiver agreement has been introduced in evidence. If you find in this cause that the plaintiff and the defendant company, through its adjuster, before anything was done towards adjusting the loss here sued on, entered into the non-waiver agreement above mentioned, then I charge you that the legal effect of such non-waiver agreement is such that nothing done after its signature in or about the investigatin of said loss or ascertaining the amount of the stock or of the loss

would operate as waiver of any of the rights of either party, either plaintiff or defendant, or as a waiver of any of the terms of the policy sued, or as any waiver of any forfeiture or violation of its terms, if you find that any such forfeiture or violation had taken place." In connection with this charge the Court instructed the jury that a non-waiver agreement may itself be waived by express agreement or by acts or conduct.

The appellant excepts to this last instruction as a mere abstract proposition, inapplicable and prejudicial, as there was no testimony tending to show such waiver. It is not, and can not be, disputed that the non-waiver agreement could be waived, as it would be unreasonable to give more potency and sanctity to such an incidental agreement than to the principal agreement. The policy itself contains non-waiver agreements. In one place it is stipulated that the company "shall not be held to have waived any provision or condition of the policy, or any forfeiture thereof by any agreement, act or proceeding on its part relating to the appraisal or any examination herein provided for," and in another place that "no officer, agent, or other representative of the company shall have power to waive any provision or condition of the policy except such as by the terms of the policy may be the subject of agreement indorsed herein or added hereto, and to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Notwithstanding such provisions in the policy the law is well settled in this State that an insurance company waives the forfeiture, if with knowledge of the facts constituting forfeiture the policy is delivered as a valid contract. *Pelzer Mfg. Co.* v. *Sun Fire Ins. Office,* 36 S. C., 273, 15 S. E., 562; *Gandy* v. *Ins. Co.,* 52 S. C., 228, 29 S. E., 655; *Mad-*

*den & Co.* v. *Ins. Co.,* 70 S. C., 303, 49 S. E., 855; *Doyle* v. *Hill,* 75 S. C., 263; *Fludd* v. *Assurance Society,* 75 S. C., 320.

It is also well settled that a forfeiture is waived if, with knowledege of the facts showing the forfeiture, the insurance company requires the insured to do some act or incur some trouble or expense inconsistent with the position that the contract had become inoperative by breach of a condition. *Kingman* v. *Ins. Co.,* 54 S. C., 603, 32 S. E., 762. The same rule applies with reference to alleged forfeiture under contract with a telegraph company. *Hays v. Tel. Co.,* 70 S. C., 16, 48 S. E., 608, 67 L. R. A., 481.

Applying the same test to the non-waiver agreement, we think there was evidence which made it proper to submit the whole question of waiver to the jury. There was evidence that the books were examined by the adjuster, and the absence of cash entries from January 5th to August 17th was discovered soon after the delivery of the books on December 31st. McMillan testified that the adjuster made no claim that such deficiency worked a forfeiture, but on the contrary, the evidence shows that the adjuster, notwithstanding this knowledge, proceeded with the attempted adjustment by requiring the plaintiffs to procure certified invoices. The adjuster returned to Mullins on February 20th after notice from plaintiffs that they had procured the invoices, and with full knowledge that the books failed to show such sales, procured from plaintiff Jos. A. McMillan an affidavit in which the cash sales for the period named were estimated at $1,640. McMillan testified that when he signed that paper he was trying to come to a settlement of the amount of the loss by the fire, that the adjuster told him he could not make proof of loss without having some agreement about it and requested him to make an estimate of the cash sales. Plaintiff further testified that when the adjuster left on February 20th, he promised to return the following Wednesday, but did not do so. This was certainly some evidence of conduct on the part of the company inconsistent

with the idea that the absence of the cash book would be regarded as a forfeiture of the policy.

The foregoing conclusions render it necessary to overrule the exceptions in each case.

The judgment of the Circuit Court in each of the above named cases is affirmed.

MR. JUSTICE WOODS, *dissenting.* I dissent on the ground that there was no evidence of waiver of the non-waiver agreement. All the acts relied on to constitute waiver of this contract were done after the execution of the contract in investigating the nature and extent of the loss, and were expressly covered by the non-waiver agreement.

November 2, 1907. PER CURIAM. After careful consideration of the petition for rehearing herein, the Court is satisfied that no material issue of law or fact has been overlooked or disregarded.

It is therefore ordered, that the petition be dismissed and that the stay of remittitur heretofore granted be and is hereby revoked.