## HIGHTOWER v. NEW YORK FIRE INS. CO.

### Civ. No. 3385.

United States District Court
E. D. South Carolina, Aiken Division.

May 8, 1953.

John H. Williams, Williams & Busbee, Aiken, S. C., for plaintiff.

Joseph L. Nettles, Columbia, S. C., Thomas, Cain & Nettles, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

In compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact.

While plaintiff was constructing a one and one-half story frame dwelling of composition shingles, in the Town of Belvedere, South Carolina, he entered into a contract of insurance with Lynch Insurance Agency, whereby the agency as the duly authorized agents of the defendant New York Fire Insurance Company sold and delivered to plaintiff a policy of New York Fire Insurance Company number 45-105395, wherein and whereby the defendant insured plaintiff from loss, including loss by fire to the said dwelling, up to and including the sum of $9,500.

The policy carries an endorsement entitled "Builder's Risk-Actual Completed Value Form (Non-reporting.) For use on Either Fire or Windstorm Policies", the pertinent part of which is as follows: "Attached to and forming part of Policy No. 45-105395 of the New York Fire Insurance Co. of New York, N. Y. issued at its North Augusta, S. C. Agency. * * * 1. On the 1½ story Frame building(s) with comp. shingle roof, including additions and attachments, adjoining and communicating, and all permanent fixtures belonging to and constituting a part of said building, all while in course of construction and unoccupied and not otherwise situated No.——— on the North side of St. James Street, Block No.——— in the City of Belvedere State of South Carolina; said building(s) when completed to be occupied as a Dwelling (Estimated Completed Cost) $9,500.00 * * *". The policy insures against the loss of the actual values which may have been placed into or made a part of such building, covering items of labor, materials, equipment, supplies, forms and temporary structures of all kinds to be used in the construction of the building. It contains the following Termination of Contract clause: "It is a condition of this insurance that this policy covers the property described herein only while the building is in process of erection and completion and that the building herein insured is unoccupied and not completed and that when occupied in whole or in part, this Company shall be notified and rate adjusted, except that if the building is to be a manufacturing plant, machinery may be set up and tested." Another endorsement on the policy provides: "Loss or damage, if any, under this policy, shall be payable, to Augusta Federal Savings & Loan Association Augusta, Ga. first mortgagee * * * as interest may appear, * * *." On September 14, 1951, plaintiff made a loan from the Augusta Federal Savings and Loan Association and the policy of insurance was assigned and delivered to the Association to secure said loan.

On or about March 27, 1952, the dwelling, through no fault of the plaintiff, and while still under construction, was destroyed by fire and became a total loss. The actual values which were placed into or made a part of the building covering items of labor, materials, etc. amounted to a sum in excess of $9,500.

On March 31, 1952, plaintiff notified defendant of the fire and made the necessary proof of loss and was informed by defendant, through its agent, that defendant would not be responsible for said loss. At the time of the loss, the premiums had been paid, as required. After the loss the defendant paid Augusta Federal Savings and Loan Association the amount due it upon the mortgage from plaintiff to said Association, the payment being made by virtue of the mortgagee clause attached to the policy by endorsement.

During the construction of the building, a short time before Christmas, 1951, plaintiff, who was doing the construction work himself, moved into several rooms of the dwelling with his family, in order to be on the premises to facilitate the construction.

When the plaintiff moved into the incompleted dwelling house covered by the policy of insurance, he did not know whether he was supposed to change the policy from Builder's Risk or not, and in order to find out about the meaning of the policy, he went to the office of defendant's agent and

told him he had moved into part of the house and asked him about it. Whereupon the agent asked him how long it would be before the house was completed. The insured told him that it would probably be two or three weeks, or probably a month, whereupon the agent of the insurance company told the insured, "Well, go ahead on and when you complete it, why, let me know and we will change it over". He said, "it was all right when I finished the house to come down and we would change the policy". Later on, about the last of January, or the first of February, 1952, when the insured completed the part of the house he was living in, he called the agent of the insurance company on the telephone and told him that he was through with the part of the house that he was living in and asked him if it was time to take out another policy and the agent of the defendant insurance company asked him how long it would be before he would finish the house and insured told him it would "probably be a month or maybe longer before I can". The agent of the defendant insurance company then said that it would be all right, and when he finished it to come down and change the policy.

From the foregoing conversation, I find that the agent of the insurance company consented to the occupancy and advised the plaintiff that when the house was completed to come to his office and he would change the policy to permanent insurance; that it was contemplated by all the parties that the policy would continue until such time as the temporary insurance was converted into a permanent policy and the rate of the premium adjusted accordingly.

At the time of the fire the house was still under construction.

The house had seven rooms on the first floor, three rooms in the basement and three rooms in the second story. At the time of the fire all the ground floor was completed, except the overhead ceiling and pouring of the concrete porches. The rooms upstairs had some work done upon them, but had not been completed.

The occupancy of the house by the insured did not increase the risk or in any manner contribute to the fire.

The agent had full authority to act for the defendant insurance company.

### Conclusions of Law.

1. Section 37–233 of the Code of Laws of South Carolina, 1952, provides: "Who deemed agents of insurance companies. Any person who (a) solicits insurance in behalf of any insurance company, (b) takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, (c) advertises or otherwise gives notice that he will receive or transmit any such application or policy, (d) shall receive or deliver a policy of insurance of any such company, (e) shall examine or inspect any risk, (f) shall receive, collect or transmit any premium of insurance, (g) shall make or forward any diagram of any building or buildings, (h) shall do or perform any other act or thing in the making or the consummating of any contract of insurance for or with any such company, other than for himself, or (i) shall examine into and adjust or aid in adjusting any loss for or in behalf of any such insurance company, whether any such acts shall be done by an employee of such insurance company or at the instance or request of such insurance company, shall be held to be acting as the agent of such insurance company for which such act is done or risk is taken."

2. A Builder's Risk policy of the type here under consideration is temporary insurance during construction and is usually changed into permanent insurance when the construction work is completed without any interruption of the coverage. Here notice of the occupancy was given to the authorized agent of the defendant insurance company. He consented to the occupancy and advised the insured to come to his office when the house was completed and he would change the policy to permanent insurance. It was contemplated by all the parties that the policy would continue until such time as the temporary insurance was converted into a permanent policy and the rate of the premium adjusted accordingly. Under such circumstances, the defendant insurance company is bound by the actions and representations

of its duly authorized agent and the policy of insurance was in full force and effect at the time of the loss by fire and the plaintiff is entitled to recover from the defendant the sum of $9,500, less $3,654.11, to the Augusta Federal Savings and Loan Association, and less $1991.27, assigned to Howard Lumber Company, which sum should be paid to Howard Lumber Company by the defendant insurance company, in accordance with the provisions of the assignment. Hewett-Williams & Williams C. Co. v. Capital Fire I. Co., 5 Cir., 188 F. 2d 241; Hartford Fire Ins. Co. v. Tatum, 5 Cir., 5 F.2d 169; Whaley v. Guardian Fire Insurance Co., 124 S.C. 173, 117 S.E. 209; 45 C.J.S., Insurance, § 723, p. 717; 45 C.J.S., Insurance, § 704, p. 675; McMillan & Son v. Insurance Co., 78 S.C. 433, 58 S. E. 1020, 1135; Bowles v. Mutual Ben. Health & Accident Ass'n., 4 Cir., 99 F.2d 44, 119 A.L.R. 756; Cuthrell v. Milwaukee Mechanics Ins. Co., 234 N.C. 137, 66 S. E.2d 649; Travelers Fire Insurance Co. v. Frady, 4 Cir., 180 F.2d 339.

Judgment is hereby directed accordingly, and it is so ordered.