## SUPREME COUNCIL OF ROYAL ARCANUM v. TAYLOR.

### (Circuit Court of Appeals, Eighth Circuit. March 17, 1903.)

### No. 1,764.

1. LIFE INSURANCE—BENEFIT ASSOCIATION—WAIVER OF PROMPT PAYMENT OF ASSESSMENTS.

A fraternal benefit association cannot be deemed to have waived a condition of its contract with a member requiring the payment of an assessment on or before the last day of each calendar month, without notice, and which provided that in default of such payment the member should stand suspended, and prohibited the collector of the local council from receiving an assessment after the day it became due; nor was it estopped to insist upon such suspension, which occurred some days before the member's death, because on some previous occasions he had paid after the close of the month, where that fact was not reported to the local council nor known to the supreme council, but where, in fact, the assessment had in each case been advanced for him by the collector under an arrangement between them.

In Error to the Circuit Court of the United States for the District of Colorado.

James H. Brown (Frederick H. Bacon and Andrew W. Gillette, on the brief), for plaintiff in error.

Ralph Hartzell, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action is founded on a benefit certificate promising the payment of $3,000 to Anna T. Taylor, the

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1914.

defendant in error on the death of her husband, George F. Taylor, which was issued by the Supreme Council of the Royal Arcanum (hereafter termed the "Supreme Council") on September 3, 1895. George F. Taylor, the plaintiff's husband, appears to have become a member of a local council termed the Arapahoe Council, No. 1,643, of the Royal Arcanum, located at Denver, Colo., on the date last mentioned, and received at that time a benefit certificate payable to his wife. Taylor died on November 17, 1900. The supreme council refused to pay the promised indemnity, whereupon this action was commenced.

The supreme council declined to pay the promised indemnity on the ground that the deceased did not comply with the terms and conditions of the benefit certificate, in that he made default in the payment of a regular assessment thereon that was due on the last day of October, 1900, and thereby, under the constitution and rules of the order, became suspended. The plaintiff below replied to this defense by averring, in substance, that the supreme council was estopped from interposing such a plea because it had made a practice of receiving assessments days after they were due, and had thereby lured the deceased into the belief that a prompt payment of assessments was unnecessary. On this issue the case went to trial, resulting in a verdict for the plaintiff below.

The facts developed on the trial, that were not controverted, are these: The supreme council had an officer connected with the local council, termed a "collector," whose duty it was, under the constitution and by-laws of the order, to keep full and correct accounts between the local council and its members, and to receive all dues and assessments paid by the members, and to turn them over to another officer of the local council, termed the "treasurer," who, in turn, transmitted to the supreme council what was collected from members to replenish the widows' and orphans' fund held by the supreme council, out of which all indemnities to members were paid. It was the practice of the collector to report to the treasurer the number of members whose dues had been paid either by them or for them, but not the names of the members who had thus paid their dues, and the treasurer made a like report to the supreme council when he transmitted the money belonging to the widows' and orphans' fund. The plaintiff's husband was never reported to the local council as delinquent as respects any assessments that became payable prior to the one that was due on October 31, 1900, but, so far as the records of the local council and the records of the supreme council showed, had paid all of his dues and assessments in due season. The fact is, however, that on seven or eight occasions during the year 1899, and probably on one occasion during the year 1900, the deceased had made his payments to the collector several days after the last day of the month on which the assessments were due. The testimony showed, however, and the fact is not contradicted by any evidence contained in the record, that on each of these occasions, by an arrangement between the deceased and the collector, the latter person advanced the assessments to the treasurer out of his own moneys, and reported them as paid in due season, and was subsequently reimbursed for

such advances by the deceased. The assessment that should have been paid on October 31, 1900, was not thus advanced by the then collector, and the deceased was reported as delinquent. He died before this assessment was paid, and it was never paid, although it seems to have been tendered on November 5, 1900, to the local treasurer, but when so tendered the money was not accepted, because the deceased had already forfeited his membership and been suspended.

The following provisions are contained in the constitution and general laws of the order, namely:

(a) "Each member of the Order shall pay to the collector of his Council, without notice, twelve regular assessments in each calendar year, due and payable before ten o'clock p. m. of the last day of each calendar month; * * *."

(b) "Any member failing to pay any regular or extra assessment before the time prescribed for such payment, shall stand suspended from the Order and all benefits therefrom."

(c) "The collector shall imm - lately notify the Regent (of the local Council) of every suspension of a member for nonpayment of assessments and the date thereof."

(d) "A collector shall not receive an assessment tendered by or for a member after the time for payment thereof has expired and any such receipt shall not prevent suspension."

(e) "The neglect or failure of a member's agent or friend to pay for him an assessment, shall not prevent his suspension."

Learned counsel for the defendant in error relies on the receipt of assessments by the collector of the local council after they were due as constituting a waiver of the defense pleaded in the answer or as an estoppel, and it may be conceded that if, on the occasions when the deceased did not pay the assessments in due season, they had not been advanced by the collector, so that credit was in fact extended by the supreme council, and if it had been aware of the collector's action and had taken no exceptions thereto, the plea of estoppel or waiver, whichever it may be termed, would have been tenable. The law to this effect is so well settled that it is unnecessary to cite any of the numerous authorities. But in the present instance the evidence does not show that any credit was extended by the supreme council, or the local council, for that matter. The collectors say that when the deceased did not pay his dues in time they advanced them for him out of their own funds up to October, 1900, so that he was never in default in the payment of his dues until the last-mentioned month. Moreover, if we were able to concede that there was any evidence tending to show that credit was at any time extended by the supreme council, and that an assessment payable by the deceased was not paid, when due, either by the deceased or any one for him, and that it was subsequently paid to and accepted by the collector, then there is not a particle of evidence tending to show that such conduct on the part of the collector was known to the supreme council or ratified by it, and the case falls squarely within the decision of the Supreme Court in Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 361, 22 Sup. Ct. 133, 46 L. Ed. 213, and of this court in Modern Woodmen of America v. Tevis (C. C. A.) 117 Fed. 369, 375, 377. The promise contained in the benefit certificate to pay an indemnity on the death of the member was made on condition that he

complied "in the future, with the laws, rules and regulations now governing the said Council and Fund or that may hereafter be enacted by the Supreme Council to govern said Council and Fund." This condition, as a matter of course, affected the member with knowledge of all such laws, rules, and regulations, or, at least, it made it the member's duty to become acquainted therewith, and he is conclusively presumed to have done so, although in point of fact he may have been ignorant of some of the rules. These rules declared, as above shown, that assessments were due on the last day of each month, without notice, and must be paid before 10 p. m. of that day; that a member failing to pay any such assessment became at once suspended; that a collector should not receive an assessment tendered by or for a member after the time for payment had expired; and that the neglect or failure of a member's agent or friend to pay for him an assessment when due should not prevent his suspension. Knowledge was thus brought home to the deceased that a collector had no right to accept assessments for and in behalf of the supreme council after they were due, and that he violated the laws of the order and the instructions of his principal by so doing. Conceding, therefore, that the collector was the agent of the supreme council in collecting assessments for the widows' and orphans' fund, yet the deceased cannot assert that the supreme council waived its right to exact payment of assessments on the day they became due because of the unauthorized conduct of the collector, of which the deceased must be held to have been fully aware, unless it is shown that such unauthorized act was subsequently ratified by the supreme council, and there is no such proof. Northern Assurance Co. v. Grand View Building Ass'n, and Modern Woodmen of America v. Tevis, supra.

It results, from what has been said, that the plaintiff in error, at the conclusion of all of the testimony, was entitled to an instruction in the trial court that the plaintiff could not recover. Because such an instruction was asked and was not given, the judgment below is reversed, and the cause is remanded for a new trial.