SCOTTISH UNION & NAT. INS. CO. v. ENCAMPMENT SMELTING CO.

(Circuit Court of Appeals, Eighth Circuit. December 8, 1908.)

No. 2,851.

1. INSURANCE (§ 556*)—PROOF OF LOSS—REQUIREMENTS OF POLICY—WAIVER.
Where a policy of fire insurance expressly provided that in case of loss a written and verified proof of loss should be made by the insured containing certain stated and detailed information, such proof of loss is an essential condition precedent to the company's liability, unless waived; and where it further provided that no officer, agent, or other representative of the company should have power to waive any of its conditions except in writing indorsed thereon or attached thereto, the failure to make such proof of loss is not excused by a claimed waiver, not in writing, by an agent of the company not shown to have any express authority to make it and whose action was not ratified by the company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1376; Dec. Dig. § 556.*]

2. INSURANCE (§ 665*)—PROOF OF LOSS—SUFFICIENCY—PROOF UNDER OTHER POLICIES.
The fact that an insured made proof of loss under one insurance policy is not sufficient to authorize a recovery on others issued by the same company on the same property which required the proofs thereunder to set out certain details of fact, where the proof actually made was not introduced in evidence and it is therefore not shown that it complied with such requirement.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 665.*]

3. INSURANCE (§ 668*)—BUILDING RISKS—BREACH OF CONDITION SUBSEQUENT —OCCUPANCY OF BUILDING.
Insurance policies covered a builder's risk on the building and machinery of an oremill which, when completed, was to have a capacity for crushing 25 tons of ore per hour. The policies provided that the premises should not be "occupied" for a longer period than 30 days without special permission and a readjustment of the rate. The owner started the machinery in the mill 33 days before it was destroyed by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fire, but less than a full hour's work was done in either of the first three days. *Held*, that whether the premises were "occupied" during such three days within the meaning of the policies, or whether their use was merely experimental for testing purposes, was a question of fact to be determined from the evidence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1760; Dec. Dig. § 668.*]

In Error to the Circuit Court of the United States for the District of Wyoming.

This was a suit at law to recover on two policies of fire insurance executed by the insurance company, defendant below, one for $3,500, under date December 27, 1906, insuring plaintiff's building and machinery therein in process of construction against loss by fire until June 27, 1907, the other for $2,500, dated January 17, 1907, insuring the machinery alone against loss by fire until July 17, 1907. The building and machinery were totally destroyed by fire on May 10, 1907, prior to the expiration of the policies. The policies each contained the following provisions: (1) "It is warranted that the premises hereby insured shall not be occupied for a longer period than thirty days, without special permission being granted in writing hereon, and re-adjustment of rate." (2) "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy. * * *" (3) "If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, * * * and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify." (4) "The loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required." (5) "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The amended complaint stated the facts concerning the issue of the policy, the destruction of the property by fire, and other facts entitling plaintiff to recover; but, by way of anticipating and avoiding a possible defense, averred that plaintiff duly performed each and every act and condition required of it

---

by the terms of the policy, except that the defendant expressly waived a literal compliance with the provision of the policy requiring the proof of loss, and that said waiver occurred in the following manner: "After the defendant had notice of the loss by fire hereinbefore mentioned, and long prior to the time limited within the provision of said policy, hereinbefore referred to, it caused its state agent for the states of Colorado and Wyoming, to wit, one O. E. Lane, to visit the scene of said fire, in company with various insurance adjusters for other companies holding insurance on said property, and the said O. E. Lane did then and there enter into and upon the ascertainment and adjustment of the loss occasioned by said fire, and did then and there personally, at the instance of said defendant company, obtain and receive full, complete, and accurate knowledge with respect to the said fire, and the loss occasioned thereby, and did report the same to the said company, who did then and there, and within the period limited by the terms and provisions of the said policy, have and receive full, accurate, and complete knowledge with respect to said loss, in each and every particular required by the terms of said policy, and otherwise, from the said Lane, so appointed by the said defendant for that purpose as aforesaid." The defendant answered, and, amongst other things, denied that plaintiff had duly performed the conditions required of it by the policy, and particularly denied that defendant had waived a literal compliance with the provisions of the policy requiring proofs of loss within 60 days after the fire. Defendant also pleaded that plaintiff, without the consent of the defendant written upon or attached to the policy, and without readjustment of rate, occupied the premises described in the policy and used the machinery therein for a longer period than 30 days, whereby the policy became null and void.

Upon these issues the cause was tried to the court without the intervention of a jury, and resulted in a judgment in favor of plaintiff. The Circuit Court made no special finding of facts; but the defendant, by motion to strike out evidence, and by requests for a judgment in its favor on all the evidence produced and exceptions taken to the rulings of the court thereon, raised two important questions of law which it now contends were decisive of the case and required a judgment in its favor. These questions are (1) whether there was any competent evidence of waiver of the proofs of loss required by the policies, and (2) whether plaintiff occupied the building without the consent of the defendant, and without readjustment of the rate, for the period in excess of 30 days, and thereby committed a fatal breach of one of the warranties contained in the policy.

R. H. Hart and C. W. Burdick (Cass E. Herrington, on the brief), for plaintiff in error.

Edmund F. Richardson (Stephen W. Ryan and Horace N. Hawkins, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). It is not and cannot be disputed that a failure to furnish proofs of loss in cases like the present constitutes a breach of a condition precedent to recovery. Plaintiff, in its petition, instead of claiming that it had performed this condition, admitted in effect that it had not done so, and justified its failure by alleging that defendant had waived its performance. Proof of the waiver consisted of oral evidence only. It tends to show that an agent of defendant company, a Mr. Lane, by its direction visited the scene of the fire soon after its occurrence in company with insurance adjusters of other insuring companies for the purpose of making an independent examination of the loss and reporting to defendant company his conclusion; that he made such examination and report, prepared for plaintiff a proof of loss under

a third policy which defendant company had issued on May 5, 1907, not as a builder's risk, like the two policies in suit, but a straight term policy upon the premises as a completed structure; that Mr. Cobb, vice president of the plaintiff company, signed the proof so made out by the agent, and that the claim under that policy was paid by defendant company; that the policies in suit were two of many which had been issued by defendant and other insurance companies on the risk, and that other proofs of loss under other policies were made out on the same occasion and signed by Mr. Cobb; that the latter, at the time of signing, believed the proofs so signed by him included proofs under the two policies in suit.

Defendant's testimony tended to show that the agent limited his consideration and action to the policy issued on May 5th; that he declined to consider any claim under the two policies in suit because he discovered a "builder's permit" attached as a rider to them, and was informed that the structure had been in operation as an ore crusher more than 30 days without permission or readjustment of rate; that he told the officers then present that he was in no position to admit or deny liability on these policies, and that he had no authority to take any action with respect to them.

We have now referred to the evidence sufficiently to show that it was exclusively of an oral and disputed character. There is no claim that the waiver was in writing or indorsed on the policy; there is no proof that Mr. Lane had any express authority to waive the required condition, or that any waiver was made in writing or indorsed on the policies; and there is no proof that defendant afterwards, with knowledge of the facts of the case, or otherwise, ratified the action of the agent except in so far as it may be implied from the fact that the company paid a loss under the policy of May 5th on proof of loss so made by the same agent, Lane.

We are relieved by the decision of the Supreme Court of the United States in the case of Northern Assurance Company v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, from much responsibility in this case. Prior to that decision there had been a diversity of views expressed by courts of the United States, both national and state, on the subject of waiver of provisions and conditions of policies of insurance by agents. In that case the Supreme Court, by Mr. Justice Shiras, exhaustively reviewed former decisions, and announced conclusions which have been since then adhered to by that court and necessarily followed by all other courts of the United States. He there declared that the principle governing contracts in general requiring them, if in writing and unambiguous, to speak for themselves, is applicable to cases of insurance contracts as fully as contracts on other subjects. He there said:

"That it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the

insured is presumed, as matter of law, to be aware of such limitation: that insurance companies may waive forfeiture caused by nonobservance of such conditions; * * * that, where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

The clause of the policy under consideration by the Supreme Court was exactly the same as that limiting the power of an agent in the present policies, namely:

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed herein or added thereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In Hagan v. Scottish Ins. Co., 186 U. S. 423, 433, 22 Sup. Ct. 862, 46 L. Ed. 1229, and Hartford Fire Ins. Co. v. Wilson, 187 U. S. 467, 478, 23 Sup. Ct. 189, 47 L. Ed. 261, the Supreme Court reasserted the conclusions stated in the Northern Assurance Company Case, and in the last-mentioned case said:

"There is no attempt, by parol testimony, to contradict any stipulations of the policy, something which we have recently held cannot be done."

We have scrupulously recognized and applied that doctrine in the following cases: Modern Woodmen of America v. Tevis, 54 C. C. A. 293, 117 Fed. 369; Supreme Council of Royal Arcanum v. Taylor, 57 C. C. A. 406, 121 Fed. 66; Atlas Reduction Co. v. New Zealand Ins. Co., 71 C. C. A. 21, 138 Fed. 497, 9 L. R. A. (N. S.) 433; Connecticut Fire Ins. Co. v. Buchanan, 73 C. C. A. 111, 141 Fed. 877, 4 L. R. A. (N. S.) 758; Mulrooney v. Royal Ins. Co. (C. C. A.) 163 Fed. 833.

The doctrine is a reasonable one. It tends to promote certainty in the proof of transactions, and to inculcate a salutary and wholesome regard for the very terms of a contract when deliberately put in writing by competent parties. There is, therefore, no escape from the conclusion that, as Agent Lane was not shown to have any express authority to waive the condition requiring proofs of loss, and as no such waiver was written upon or attached to the policies, there was in contemplation of law no waiver at all, unless the defendant company, with full knowledge of the fact that an agent had attempted to waive the condition and of what he had said and done in doing so, ratified his action. No claim of ratification is made except one based on the fact that defendant paid the policy issued May 5, 1907. As proof of loss had been furnished under this policy, and thereby a legal liability had been established, we perceive no reason why the payment of that demand should dispense with a condition precedent to liability on other and different policies. Moreover, as the record is silent concerning knowledge by defendant's general officers concerning anything said or done by the agent, Lane, claimed to constitute a waiver, there is and can be no ratification.

Counsel on both sides have industriously gathered together many cases which bear upon the powers of agents of insurance companies and upon their right to waive conditions in policies, but the necessity of adverting to them or attempting to deduce a rule of decision from them is superseded by the exhaustive consideration of them by the Supreme Court in the Northern Assurance Company Case and the conclusions there reached and stated. We therefore refrain from attempting to do so. In view of this decision, we must necessarily hold that there was no competent evidence of any waiver of the proof of loss; that such proof was a condition precedent to plaintiff's right of recovery, and, not having been made, that the court erred in refusing defendant's request to render a judgment in its favor.

It was argued at the bar that the proof of loss duly made under the policy of May 5th was sufficient proof of loss under the policies in suit; but this contention, in our opinion, is unsound. Conceding, but not admitting, that performance of the condition requiring proof of loss could be shown when the only issue joined was that such performance had been waived by defendant, it does not appear that the proof of loss as actually made conformed to the requirements of the policies now in suit. We have already called attention to the great detail of facts which the insured by the stipulations of the policies was required to make known in the proof of loss. The proof as actually made was not offered in evidence, and we have no means of knowing what it contained, or that it contained information on each and all of the subjects specified and required to be furnished by the policies in suit. True, there is some oral evidence on this subject, but it is unsatisfactory and in some respects contradictory. The contents of the proof as made could have been made certain, and ought to have been made so by the production of the document. That was the best, and, so far as it appears in this case, the only, admissible evidence of the contents. For the reasons already given the judgment must be reversed, but, as the case may be again tried, we deem it best to express the opinion of the court on the question fully debated at the bar, whether the proof of occupancy of the building was such as precludes recovery.

The policies were issued to cover a builder's risk on a structure to be erected and equipped with requisite machinery to accomplish the object of crushing ore. Inasmuch as the risks and rates for insurance of occupied premises are greater, as appears from the evidence, than those of premises in process of construction, the policies contain a warranty that "the premises hereby insured shall not be occupied for a longer period than thirty days without special permission being granted in writing hereon and readjustment of rate." In other words, it was agreed that until the expiration of 30 days after occupancy, and for no longer time, the premises would be insured by the policies in suit. The premises consisted not only of a building, but of machinery so assembled and adjusted within the building as when working together should accomplish the object of crushing ore. There are few relevant facts. It appears that the crusher was intended to have a capacity for crushing 25 tons per hour when in full operation. The evidence shows that the wheels were first turned on April 7, 1907;

that six tons of ore were crushed on that day, and that this operation would have occupied about 15 or 20 minutes if the machinery had been in perfect working order; that on April 8th 19 tons were crushed, which would have consumed about 45 minutes on the condition just stated; that on April 9th about 22 tons were crushed, which would have consumed about an hour's time on the same condition. The evidence discloses the amount of work done for several days thereafter, but, as the 3 days just mentioned are the only ones necessarily involved, we refrain from pursuing the history of operation further. The fire occurred May 10, 1907. If that date was within 30 days after the premises had been occupied within the meaning of the policies, the insurance covered the loss. If, on the contrary, it was not within 30 days, the loss was not covered. The only controversy is as to the legal effect of what was done during the 3 days immediately preceding April 10th. In other words, if the use made of the premises during those days amounted to occupancy, they being more than 30 days before the fire, the policies were avoided. The trial court must have found the fact to be that the premises were not occupied during those days; but defendant's counsel earnestly contend that the undisputed evidence shows that they were so occupied from and after the time the wheels were first started on April 7th. Is that true? Physically speaking, some of plaintiff's employés were in the premises and were engaged in doing something there; but this, in our opinion, does not conclude the inquiry. They doubtless were in the premises engaged in doing something during the entire time consumed in construction. What, then, is the real test? We think occupancy began when construction ceased, and when plaintiff took possession of a completed structure fully equipped and ready to perform its destined work. The construction obviously did not cease when the building was erected. The introduction of the required machinery was as much a part of it as the erection of the building itself. Neither did construction cease when the machinery was incorporated in it. The building and machinery had to coact and co-operate to produce the intended result. The starting of the wheels for the first time might well have disclosed a want of necessary adjustment, and this might well have required readjustment of machinery and rearrangement of parts, as the evidence tends to show it did.

These observations, in our opinion, satisfactorily show that the starting of the wheels one, two, or three times even, in an attempt to perform the function of the mill, might have been experimental work necessary to determine whether the crusher as a combination of building and machinery would do its work. If so, it would not have constituted occupancy within the meaning of the policy. Such occupancy must be determined in view of the object to be accomplished by the completed structure. If the structure had been built and the machinery installed by a contractor for the plaintiff, we apprehend that the first act of starting the wheels to test whether the structure and associated machinery would operate would not constitute acceptance of the work by the owner. So, likewise, we think the mere attempt to ascertain whether the combination of structure and machinery would operate and do its intended work does not necessarily conclude

the construction. A reasonable time may well be required and allowed to test the composite structure, to adjust its parts to each other, and ascertain whether it will perform its function, before construction can be said to be completed and occupancy begun within the meaning of the policies. What such reasonable time is depends upon all the facts and circumstances of the case, and is necessarily a question to be determined by the trier of the fact. It is sufficient for our present purpose to say that the first, second, or third starting of the wheels of the crusher and actually crushing ore as done in this case is not conclusive that construction was ended and occupancy begun.

In view of the fact that the cause must be remanded for another trial, consideration of the sufficiency of the pleadings to permit proof of "other insurance," which defendant claims was fatal to recovery, and consideration of the refusal by the trial court to permit an amendment to the answer during the progress of the trial, will not be undertaken. Parties will have ample opportunity to make all proper amendments before the next trial. The answer to some other questions argued at the bar is necessarily involved in the conclusions already stated.

The judgment must be reversed, and the cause remanded, with directions to grant a new trial. It is so ordered.

PHILIPS, District Judge (concurring). The only portion of the foregoing opinion that does not meet my full concurrence is as to the discussion respecting the occupancy of the property. As read by me, the evidence is clear that the 3 days excepted from the actual occupancy of the building, within the meaning of the policy, were in no legal sense different from the other 31 days. The first 3 days' operation of the mill was with the same complement of employés and for the purpose of crushing ore for commercial use as the remainder of the time the mill was used, with varying results. There was nothing, to my perception, in the manner and visible purpose of the operation to indicate that one day more than another was merely for experimental tests or adjustment of machinery; nothing in the continuous period of 34 days' running to enable the jury, without mere conjecture, to determine where the running for one purpose ended and where for the other purpose it began. With as much reason, it seems to me, had the defendant in error run the mill in the same fashion for 40 days, and a less quantity of ore had been crushed in the first 10 days than the designed capacity for output, or for a like subsequent period, the first 10 days could be arbitrarily eliminated by assuming them to have been employed merely for purposes of adjustment and test of the machinery and structure. As this, however, is a difference of view somewhat on a matter of fact; and the case is to be retried, if it should ever reach this aspect of the case, possibly developing additional facts, further discussion at this time of the question may be somewhat academic.