**Vincent CIARAMITARO, Plaintiff,**

v.

**The SASKATCHEWAN GOVERNMENT INSURANCE OFFICE, Defendant.**

**Civ. A. No. 55-32.**

United States District Court
D. Massachusetts.

Jan. 30, 1956.

I. Irving Kline, Gloucester, Mass., for plaintiff.

Viola B. Kneeland, Kneeland & Splane, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff sues for the face value of a marine insurance policy on his fishing vessel, as a total loss. The face value of the policy is $30,000. The defendant is an insurance corporation with home offices in Saskatchewan, Canada, whose agents in the transaction were Gough and King, Inc., of New York. By the policy, the defendant has consented to be sued in Boston.

238

## Findings of Fact

On October 22, 1953, the defendant insured the plaintiff's fishing vessel Eleanor for a period of one year through the agency of Gough and King. Coverage was by a hull policy for a total loss on a warranty of "day fishing only, out of Gloucester, Mass." The plaintiff's vessel was used in whiting fishing, a type of fishing which is done in daylight hours. It was the practice of the plaintiff to put out from Gloucester at about 3:00 A.M. and arrive at his fishing area at about dawn, there to fish until the sun was low, and to return to Gloucester, or on occasion to put in at a nearby harbor or shelter rather than to return to Gloucester. Fishing for two or three days would produce a salable quantity of fish, so that his boat would be unloaded at the end of a two or three day trip, and the process repeated. The defendant alleges that by remaining away from Gloucester overnight, the plaintiff breached the warranty of the insurance contract, and terminated its liability on the policy. In support of its allegation the defendant introduced evidence, which at best would indicate that on several nights during the course of the eight and one-half months of effective policy coverage, the plaintiff anchored his craft inshore in calm waters and did not return to Gloucester. The defendant accepted the plaintiff's monthly premiums on the policy at all times of coverage. At about 3:00 A.M. on July 3, 1954, the plaintiff set out from a pier in Gloucester to commence a fishing trip within the limits of geographical coverage in the policy, and after fishing all morning, his vessel sank from undetermined causes early in the afternoon. It was a total loss. The only provision for forfeiture of coverage in the policy was for sale or transfer.

At the time of the loss of this vessel she was engaged in day fishing out of Gloucester, and as such was covered by the policy issued by the defendant. Reason and authority are opposed to the defendant's argument that the plaintiff, by not returning to Gloucester on occasion, forfeited the policy. By reason, there was no provision for forfeiture in this event, nor is there any indication from the contract that a forfeiture existed in the contemplation of the parties as a result of remaining overnight at a place other than Gloucester. It must be emphasized that this sinking occurred in the middle of the day, as the policy envisioned it. Here is not a question of loss occurring when the vessel was lying to off the coast. Had the insurer intended an avoidance for breach of the warranty it should have so provided. See Henjes v. Aetna Insurance Co., 2 Cir., 132 F. 2d 715.

The defendant's argument further relies on a presumed ambiguity in the term "day fishing". However, pointed authority dictates that where there is ambiguity in the terms of an insurance contract, the ambiguity must be interpreted strictly against the insurer; Connecticut Indemnity Co. v. Lee, D.C., 74 F.Supp. 353, and Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 48 S. Ct. 512, 72 L.Ed. 895. This rule is inherent in the construction of insurance contracts. Counsel for the plaintiff has cited the case of Henjes v. Aetna Insurance Co., supra. The rationale in that case, persuasive in disposing of the case at bar, is that where a vessel breaches a warranty by acting contrary to its warranty, then coverage on the policy is suspended during the existence of the unwarranted activity, but is resumed at the termination of the unwarranted activity. It is true that in the Henjes case there was a provision for suspension of coverage during "deviation beyond the limits named", and reattachment if "the vessel shall then be in all respects seaworthy". Nonetheless, this provision was construed for the purpose of deriving the intent of the parties. In the present instance, the insurer's silence regarding forfeiture for breach of the warranty, accepted by the insured, indicates that the parties did not contemplate forfeiture in the event of unwarranted activity. Thus, only for the sake of argument, if it were unwarranted action by the plaintiff, remaining overnight at a place other

than Gloucester, the coverage of the policy would be suspended during such times, but resumed when the plaintiff's actions conformed to the warranty. It may be noted here that the defendant has not sought to establish a causal connection between the alleged breach of warranty and the loss.

This discussion does not determine that the plaintiff did breach his warranty of "day fishing only, out of Gloucester, Mass." There was much convincing evidence that his actions conformed to the usage attached to the term "day fishing" in the whiting industry in Gloucester.

### Conclusion of Law

I conclude and rule that at the time of loss of the plaintiff's fishing vessel Eleanor the plaintiff was within the stated limits of coverage under the policy, and that the contract of insurance was effective to cover his loss.

Accordingly, judgment must be for the plaintiff.