William H. **HENDRIX**, Appellant,

v.

**NEW AMSTERDAM CASUALTY COMPANY**, a corporation, Appellee.

No. 9689.

United States Court of Appeals
Tenth Circuit.

Feb. 8, 1968.

**300**

Arthur H. Coleman, Santa Fe, N. M. (Ruben Rodriquez, Santa Fe, N. M., with him on the brief), for appellant.

Mary C. Walters, Albuquerque, N. M. (Toulouse, Rudd, Gallagher & Walters, Albuquerque, N. M., with her on the brief), for appellee.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

This is a suit on a builder's risk insurance policy. There is here questioned the validity of the district court's orders permitting amendment of a removal petition to more adequately allege diversity jurisdiction and, following such amendment, granting summary judgment in favor of the insurance company on the grounds that at the time of the fire loss the building was not insured because it theretofore had been "occupied", and was "completed".

The action initially was brought by appellant Hendrix in a New Mexico state court. His complaint recited that he was a "resident" of Santa Fe, New Mexico, and that the defendant insurance company, appellee here, was a corporation doing business and writing policies of insurance in the State of New Mexico. A timely removal petition was served and filed by the insurance company, the jurisdictional allegations of which were confined to statements that the "action is one of which this (the federal) court has original jurisdiction, and is one which may be removed * * * in that it is a civil action wherein the matter in controversy exceeds the sum or value of Ten Thousand * * * Dollars, exclusive of Interest and Costs, and is between citizens of different states". It appeared from the verification of the removal petition also that the insurance company was a "Maryland corporation". Plaintiff insured moved to remand by reason of the insufficiency of these conclusional allegations to sustain diversity jurisdiction of the federal court. Thereupon, the lower court granted leave to set out fully by amendment the basis of diversity jurisdiction in accordance with facts which are not challenged, and this was done. The allowance of these amendments and the court's refusal to remand the case are assigned as error.

The jurisdictional allegations of the original petition for removal were defective for failure to specify, beyond the general claim of diversity of citizenship, the principal place of business of the defendant insurer or otherwise to show that such principal place of business was in a state other than that of the citizenship of the plaintiff,[1] and because citizenship, as distinguished from residence of the plaintiff, was not expressly alleged.[2] However, by amendment of the

1. 28 U.S.C.A. § 1332(c); Buell v. Sears, Roebuck & Co., 321 F.2d 468 (10th Cir. 1963); George v. Douglas Aircraft Co., 332 F.2d 73 (2d Cir. 1964); Niagra Fire Insurance Company v. Dyess Furniture Co., 292 F.2d 232 (5th Cir. 1961); Firemen's Ins. Co. of Newark, N. J. v. Robbins Coal Co., 288 F.2d 349 (5th Cir. 1961), cert. denied 368 U.S. 875, 82 S. Ct. 122, 7 L.Ed.2d 77.

2. Parker v. Overman, 18 How. 137, 59 U.S. 137, 15 L.Ed. 318 (1855); Kinney v. Columbia Savings & Loan Asso., 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903); Walden v. Broce Construction Company, 357 F.2d 242 (10th Cir. 1966); Kelleam v. Maryland Casualty Co. of Baltimore, Md., 112 F.2d 940 (10th Cir. 1940), reversed on other grounds 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899; Texaco-Cities

petition with leave of court these deficiencies were remedied, and the amendment related back to the time of the filing of the original petition if they were allowable.[3]

We are not unmindful of numerous district court opinions which question the power to allow such amendments under varying circumstances after the time for initially filing removal petitions has expired.[4] But if applied to circumstances comparable to those of the present case, we believe that their reasoning would be too grudging with reference to the controlling statute,[5] too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations,[6] and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts.[7] If so applied they also would be out of harmony with prior decisions originating in this jurisdiction. It is notable, too, that where other appellate courts have dealt with comparable problems, power to allow such amendments generally has been recognized, as evidenced by the cases cited in the margin.[8]

In Buell v. Sears, Roebuck & Co., 321 F.2d 468 (10th Cir. 1963), supra, this court, sua sponte, granted leave for a removal petition to be amended to sustain jurisdiction despite the initial absence of any allegation concerning the principal place of business of the defendant corporation. In a case originating in the District Court for the District of Utah, Kinney v. Columbia Savings & Loan Assn., 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903), supra, reference to "residence" rather than "citizenship" in a removal petition was held to constitute a defect which properly could be amended in the lower court after the period for removal had expired.[9] Without questioning that removal requirements should be strictly applied, the statute authorizing correction of defects by amendment to conform to the true facts should not be dissipated in the process,

Service Pipe Line Company v. Aetna Casualty and Surety Company, 283 F.2d 144 (8th Cir. 1960); Kaufman v. Western Union Telegraph Company, 224 F.2d 723 (5th Cir. 1955); Handley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435 (6th Cir. 1924).

3. Compare Rule 15(c) F.R.Civ.P. with 28 U.S.C. § 1653 (See footnote 4).

4. Among decisions relied upon by appellant are Bradford v. Mitchell Bros. Truck Lines, 217 F.Supp. 525 (N.D.Cal.1963); Young v. Railway Express Agency, Inc., 209 F.Supp. 953 (W.D.Ky.1962); Yarbrough v. Blake, 212 F.Supp. 133 (W.D. Ark.1962); Bell v. Whittenton, 250 F. Supp. 550 (W.D.Mo.1966); Chapman v. Ozark Forest Products, Inc., 246 F.Supp. 816 (W.D.Mo.1965); Evans-Hailey Company v. Crane Company, 207 F.Supp. 193 (M.D.Tenn.1962); Eubanks v. Krispy Kreme Donut Co., 208 F.Supp. 479 (E.D.Tenn.1961); Washington-East Washington Joint Authority v. Roberts and Schaefer Company, 180 F.Supp. 15 (W.D.Pa.1960); F & L Drug Corp. v. American Central Insurance Co., 200 F. Supp. 718 (D.Conn.1961); Browne v. Hartford Fire Insurance Company, 168 F.Supp. 796 (N.D.Ill.1959); and Franks v. City of Okemah, Oklahoma, 175 F. Supp. 193 (E.D.Okl.1959).

5. 28 U.S.C. § 1653. *"Amendment of Pleading to Show Jurisdiction.*
   "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts".

6. See Goforth v. Allstate Insurance Company, 213 F.Supp. 595 (W.D.No.Car. 1963). (See also D.C., 220 F.Supp. 616, aff'd on merits, 4 Cir., 327 F.2d 637.)

7. As said in another context by Chief Judge Murrah in Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962), "Certainly diversity jurisdiction should not be made to depend on whether some one can pick a legal flaw in the transaction by which jurisdiction is conferred".

8. See notes 1 and 2.

9. See also Kelleam v. Maryland Casualty Co. of Baltimore, 112 F.2d 940 (10th Cir. 1940), reversed on other grounds, 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899, where it was indicated that proof that a person is a resident of a state is prima facie evidence that he is a citizen thereof and shifts burden of showing that his domicile and citizenship are elsewhere than at the place of his residence to the party so alleging.

but should be given practical effect in accordance with its apparent intent. To be unduly restrictive in determining "defects" amendable under the statute in removal proceedings in principle would preclude the practical correction of similar inadvertences in proceedings originally brought in the federal courts, since the statute concerning amendments pertains to both.[10]

We do not accept appellant's argument that *Buell* is distinguishable from the present case because in the former the question was raised for the first time on appeal and some principle of estoppel could have operated to sustain jurisdiction there. The decision was not formulated on such a theory. Moreover, in *Kinney* the Supreme Court at least inferred that the case for amendment was strengthened by allowance in early stages of the federal proceedings. In *Kinney*, also, general allegations of jurisdiction, which appellant would have us disregard as mere conclusions and meaningless, were accepted by the Supreme Court to be at least defective allegations which could be corrected after removal.

■ The amendment of the petition for removal properly was allowed by the trial court, which did not err in denying the motion to remand.

The policy of insurance in question by endorsement covered the described building "while in course of construction". It was further therein provided:

"In consideration of the reduced premium for this policy for the use of the Builders' Risk Completed Value Form No. 17G which applies only during the period of construction, and notwith-

standing anything to the contrary elsewhere in this policy, it is a condition of this insurance that the premises shall not be occupied without obtaining the consent of the company endorsed hereon, and rate adjusted accordingly."

It was established without dispute at the pre-trial conference that the building, without the consent of the insurer, had been rented to prospective buyers and such renters regularly occupied it as living quarters for approximately two and a half months ending some fourteen days prior to the fire. Appellant emphasized that at the time of the fire the building was unoccupied, and contended that occupancy merely suspended, and did not forfeit or terminate, the policy of insurance. The trial court determined as a matter of law that the occupancy breached a condition of the policy and terminated the coverage which was not reinstated by the vacating of the premises prior to the fire. For this reason, and because it was of the further view that the construction period to which the policy was confined had come to an end prior to the fire, the court granted defendant's motion for summary judgment.

■■ The general rule to be deduced from the cases is that where a builder's risk policy is issued to insure a building only during the course of construction, the insured risk terminates upon the completion of the construction; and where such policy is issued on condition that the building shall not be occupied before completion without consent of the insurer, the insured risk ordinarily terminates upon failure of the insured to

10. 28 U.S.C. § 1653 is stated by the Revisor's Note to be based on Title 28 U.S.C., 1940 ed. § 399, Mar. 3, 1911, c. 231 § 274c, as added Mar. 3, 1915, c. 90, 38 Stat. 956. The predecessor statute expressly referred to suits removed to, as well as brought in, the district courts of the United States in diversity cases. The section, as noted by the Revisor, "was extended to permit amendment of all jurisdictional allegations instead of merely allegations of diversity

of citizenship as provided in the former section". Despite the catch line referring to the amendment of pleadings, the intent of the section was to broaden, not narrow, the statute and applies to petitions for removal as well as to original complaints or petitions. 1A Moore's Federal Practice ¶ 0.168[3.4], pp. 1204–1205. Hernandez v. Watson Bros. Transportation Co., 165 F.Supp. 720 (D.C. Colo., 1958).

comply with the condition. See Anno.: Insurance—Builder's Risk, 94 A.L.R.2d 221, 240–247.

█ The record established beyond dispute that the insured, who was an experienced insurance man, well informed concerning builder's risk policies, voluntarily rented the insured premises to prospective purchasers for a substantial period of time prior to the fire without the consent of the insurer, and that there was no waiver of the conditions of the policy. It is also clear from the terms of the policy that the absence of occupancy without consent constituted an express condition of the risk upon which the insurance obligation depended. Such intention clearly appeared from the face of the endorsement and there was no occasion to apply the rule relied upon by the appellant that ambiguities in insurance policies will be interpreted strictly against the insurer.[11] No decisions from New Mexico on the point have been cited by counsel and we have found none.[12] We are of the opinion under the circumstances of this case that the condition of the risk having been breached, coverage of the policy was thereby terminated and was not in effect at the time of the fire following the period of occupancy.[13]

Appellant strongly relies upon language in Lineas Aereas Colombianas Exp. v. Travelers Fire I. Co., 257 F.2d 150 (5th Cir. 1958), for its contention that the risk in the instant case was merely suspended and not terminated by the occupancy.[14] There an All Risk Hull Policy covering an airplane provided that it should apply only "while" the airplane was flown by insured's regular pilots holding licenses issued by United States or Columbian authorities. In holding that the insurer was not liable for loss occurring while the airplane was being flown by Mexican pilots who did not have licenses required by the policy, and who were operating the aircraft in the absence of the insured's regular pilot, the court used by way of dicta the language relied upon by appellant. In the context of this case, and on the point in question here, however, there is significant difference between a policy providing that the absence of occupancy was "a condition" of the insurance and one which would provide that the insurance was not effective "while" there was occupancy.[15]

11. See National Surety Corporation v. Dotson, 270 F.2d 460 (6th Cir. 1959). See also Cliborn v. Lincoln National Life Insurance Co., 332 F.2d 645 (10th Cir. 1964).

12. The district court's determination of local law should be accepted by the appellate court unless clearly convinced to the contrary. Cliborn v. Lincoln National Life Insurance Co., 332 F.2d 645 (10th Cir. 1964).

13. Kyte v. Commercial Union Assurance Co., 149 Mass. 116, 21 N.E. 361 (1889); Phoenix Assur. Co. v. Franklin Brass Co., 58 F. 166 (4th Cir. 1893). See also Franklin Brass Co. v. Phoenix Assur. Co., 65 F. 773 (4th Cir. 1895). Cf. Home Ins. Co. v. Currie, 54 F.2d 203 (5th Cir. 1931). See also General American Life Ins. Co. v. Armstrong, 182 Tenn. 181, 185 S.W.2d 505 (1945).

14. "It is of course true that development of the law along these lines (suspension of coverage) has come from a desire to avoid an outright forfeiture. Consequently, coverage is not permanently destroyed. It is suspended so long as, but only so long as, the violation of the specified basic policy requirements continue. Equally clear, coverage is revived the moment the breaches or conditions cease."

15. This distinction is further made clear, or other differences may be noted in cases relied upon by appellant and related cases, including Ciaramitaro v. Saskatchewan Government Ins. Office, 144 F.Supp. 237 (D.Mass.1956); Resolute Ins. Co. v. Mize, 221 Ark. 705, 255 S.W. 2d 682 (1953); Shelton v. Great American Ins. Co. of New York, 100 S.W.2d 591 (Mo.App.1937), and Crowell v. Maryland Motor Car Ins. Co., 169 N.C. 35, 85 S.E. 37 (1915). See also Reliance Insurance Co. v. Jones, 296 F.2d 71, 94 A.L.R.2d 217 (10th Cir. 1961), where the storage of a small amount of grain in an elevator was held not to amount to "occupancy" of the building on the facts; Scottish Union and Nat. Ins. Co. v. Encampment Smelting Co., 166 F. 231 (8th Cir., Wyo.1908), where occupancy by the installation of certain machinery was held

The second ground mentioned by the trial court as a basis for the granting of summary judgment was that the period of "construction" to which the risk was confined also had expired.[16] The fact that following a program of construction the house was regularly occupied by renters supported, but did not conclusively establish, completion. And under the policy there could have been completion without occupancy.[17] Yet the two grounds were related; the fact that the building had been rented for a substantial period was consistent with, and tended to support, the determination of the trial court that as a matter of law the building for practical purposes and within the contemplation of the policy had been completed prior to the time of the fire. In the context of the prior occupancy and the related policy provisions, perfection in the construction of the building was not essential to its "completion" under the policy.[18] The work of merely repairing defects or remedying inferior workmanship did not preclude a determination that the building had been completed for the purposes of the policy.[19] The only item claimed by appellant to have remained unfinished which might not have fallen within these categories was the installation of kitchen cabinet shelves. If technically it could be argued that this item or any other work of similar nature, in view of the substantial completion otherwise and the prior occupancy, was not *de minimus,* there would still remain the breach of the condition of occupancy which terminated the risk. On the whole record we conclude that the entry of summary judgment was warranted.

Affirmed.

---

to be primarily testing and not within the definition of occupancy provided in the policy; Underwriters at Lloyds, London v. Cherokee Laboratories, Inc., 288 F.2d 95 (10th Cir. 1961), which involved a policy providing that it should not apply "while the aircraft * * * is being operated by any person other than the pilots stated in Item 5 of the Declarations * * *"; and Hightower v. New York Fire Ins. Co., 112 F.Supp. 10 (D.S.Car.1953), where it was found that the agent had consented to the occupancy in question.

16. On the latter point the trial court observed: "There is no contention that any work was being done on the building at the time it burned. The only contention is that there were a few minor items yet to be completed. All of the utilities were turned on, the house was rented and an effort was made to sell it * * * In fact the gas was connected and had never been disconnected * * * Under all these circumstances it appears to me that it would be unreasonable to interpret the policy as providing coverage * * *"

17. Cf. Scottish Union & Nat. Ins. Co. v. Encampment Smelting Company, 166 F. 231 (8th Cir., Wyo.1908).

18. Daniel v. New Amsterdam Cas. Co., 221 N.C. 75, 18 S.E.2d 819 (1942).

19. Property Owners' Materials Co. v. Byrne, 176 S.W.2d 650 (Mo.App.1944). Cf. Cuthrell v. Milwaukee Mechanics Ins. Co., 234 N.C. 137, 66 S.E.2d 649 (N.Car. 1951).